PEOPLE v ODOM

Docket No. 267867. Submitted August 7, 2007, at Lansing. Decided
     August 9, 2007, at 9:00 a.m.

   Antoine D. Odom was convicted by a jury in the Jackson Circuit
     Court, Charles A. Nelson, J., of three counts of assault on a prison
     employee by an inmate, MCL 750.197c(1). The convictions arose
     from an incident in a state prison when the defendant, who is HIV
     positive (infected with the human immunodeficiency virus) and
     appeared to be bleeding out of the corner of his mouth, punched
     two corrections officers in the face and spat at a third. The
     defendant appealed.

     The Court of Appeals *held*:

     1. There was sufficient evidence on the record to support the
   trial court's score of 20 points for offense variable 1, MCL
   777.31, because the victim was subjected or exposed to a
   harmful biological substance; HIV-infected blood is a "harmful
   biological substance."

     2. None of the conduct of the prosecutor the defendant com-
   plained of amounted to misconduct.

     3. The defendant received the effective assistance of coun-
   sel.

     4. There was sufficient evidence to support the jury's conclu-
   sion that the defendant was an inmate who assaulted three
   corrections officers.

     5. The defendant never requested permission from the trial
   court to represent himself, and, therefore, was not denied the right
   to represent himself.

     6. The release of the defendant's medical information was
   permissible under the applicable Michigan statutes.

     7. The defendant was not denied the right to confront the
   witnesses against him.

     8. The defendant failed to establish that the jury and the trial
   court were biased against him.

     Affirmed

1. CRIMINAL LAW — SENTENCING — OFFENSE VARIABLE 1 — HARMFUL BIOLOGICAL SUBSTANCES.

Blood infected with human immunodeficiency virus is a "harmful biological substance" for the purpose of scoring offence variable 1 for a defendant's subjecting or exposing the victim to a harmful biological substance (MCL 750.200h; MCL 777.31).

2. CRIMINAL LAW — TRIAL — SELF REPRESENTATION.

Every criminal defendant has the constitutional right to waive the assistance of counsel and represent himself or herself at trial; however, the defendant must make a request for permission to do so from the court before the defendant may proceed pro se.

3. PRISONS AND PRISONERS — EXPOSURE OF EMPLOYEES TO BODY FLUIDS OR BLOOD — TESTING.

An employee of the Department of Corrections who is exposed to the blood or body fluids of a prisoner may request that the prisoner be tested for infection by the human immunodeficiency virus or the hepatitis B virus; the department may then test the prisoner regardless of consent by the prisoner and must notify the requesting employee of the test results within two days of obtaining the results; a physician or health officer may disclose information pertaining to an individual who is infected with the human immunodeficiency virus to an individual who is known by the physician or health officer to be a contact of the infected individual (MCL 333.5131 [5][b]; MCL 777.267b[1], [4], [7], and [10]).

4. PUBLIC HEALTH — HUMAN IMMUNODEFICIENCY VIRUS — DISCLOSURE OF TEST RESULTS.

The results of test to determine the presence of the human immunodeficiency virus are confidential, but may be released under limited circumstances as provided by statute, such as in response to a court order and subpoena (MCL 333.5131[1], [2], and [3]; MCL 600.2157).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Valerie Newman*) and Antoine D. Odom, *in propria persona*, for the defendant.

Before: WHITBECK, C.J., and TALBOT and ZAHRA, JJ.

PER CURIAM. Defendant Antoine Odom appeals as of right from his conviction by a jury of three counts of assault on a prison employee by an inmate.[1] The trial court sentenced Odom as a fourth-offense habitual offender[2] to concurrent prison terms of 5 to 15 years for each conviction. This case arose from an incident in a prison when Odom, while in the prison cafeteria, allegedly punched and spat on corrections officers. We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Sergeant Katoshia Watson testified that on December 12, 2004, she was working as "yard sergeant . . . responsible for yard activities and the chow lines, among other activities" at the Charles Egeler Reception and Guidance Center in Jackson, Michigan. Sergeant Watson testified that during meals, officers try to discourage the inmates from talking while in the food line.

Sergeant Watson testified that while Odom was moving through the food line he "stated that he had a problem with a particular officer . . . related to a ticket" that he had received. Odom testified that he was trying to talk to Sergeant Watson regarding an incident that had occurred on December 10, 2004, in which his cell was "ransacked." Sergeant Watson testified that she responded by telling Odom that she "had over 300 more inmates that needed to be fed" and that Odom was holding up her line. She told Odom that she would talk to him when she had time. Odom stated that Watson was responsible for handling his complaint about the incident because "she was working that block the day

[1] MCL 750.197c(1).
[2] MCL 769.12.

the incident occurred." Sergeant Watson testified that Odom "was not exactly happy" to hear her answer to his request to talk to her. Sergeant Watson said that Odom "brawned up" and his voice level went up as if he were very angry. Sergeant Watson said that she was concerned about things escalating, so she alerted an officer "to be mindful of this particular inmate" and allowed Odom to eat his meal. After Odom ate, Sergeant Watson asked another officer to get Odom and bring him over to talk to her. After discussing Odom's complaint, Sergeant Watson indicated that there was nothing she could do for him. Sergeant Watson testified that Odom was upset, and as he walked away, he started to get loud and attempted to involve the other inmates. Sergeant Watson said that the other inmates started egging Odom on. Sergeant Watson testified that at that time, she told Officer Kenneth Ellis to handcuff Odom.

Sergeant Watson testified that at first she thought Odom was going to comply with the cuffing, but instead Odom punched her in the face. Several officers confirmed that they saw Odom strike Sergeant Watson. Sergeant Watson testified that Odom also spat in her face twice. She said that Odom "kept coming at her" and that Officer Ellis tried to assist but "it was pretty hard for [the two of them] to even handle him." She stated that "probably about seven" officers were needed to get Odom under control. Sergeant Watson testified that "an officer applied a pressure point" to Odom and held him down, and eventually Odom was carried to the segregation unit by eight officers. Sergeant Watson said that she then removed herself from the situation, as is required by policy. Sergeant Watson testified that she was later informed by medical personnel that Odom was HIV positive (infected with the human immunodeficiency virus) and had hepatitis B. Odom denied hitting or spitting on Sergeant Watson.

Officer Michael Marsh testified that after he saw Odom hit Sergeant Watson he went toward Odom and then Odom punched him in the mouth. Corrections Officer Steven McCrum testified that he saw Odom strike Officer Marsh in the face. Odom denied punching anybody in the mouth.

Officer Douglas Culler testified that he helped carry Odom from the cafeteria. Officer Culler testified that as he was getting Odom out of the cafeteria he noticed that Odom "appeared to be bleeding out of the corner of his mouth." Officer Culler testified that while carrying Odom into the segregation cell, Odom spit in his face. Officer Culler testified that he thenafter had to receive a mixture of several drugs to protect against possible HIV exposure. Odom denied spitting at Officer Culler.

## II. SENTENCE SCORING

### A. STANDARD OF REVIEW

Odom argues that he is entitled to resentencing because the trial court improperly scored 20 points for offense variable (OV) 1 for Odom's spitting his HIV-positive blood on a corrections officer.[3] An unpreserved objection to the scoring of offense variables is reviewed for plain error.[4]

### B. ANALYSIS

Points are scored under OV 1 for an offender's aggravated use of a weapon.[5] Pursuant to the sentencing guidelines, 20 points are scored for OV 1 when

---

[3] The record indicates that Odom may have also been infected with a strain of hepatitis.

[4] *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

[5] MCL 777.31.

"[t]he victim was subjected or exposed to a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device."[6] Trial testimony indicated that Odom was HIV positive at the time of the offense and that his mouth was bleeding as a result of his altercation with the officers. Therefore, the trial court scored 20 points for Odom's spitting of HIV-positive blood as part of his assault on a corrections officer.

Clarification of which substances qualify as "harmful biological substances" is a question of first impression for this Court. The sentencing guidelines do not directly define the term "harmful biological substance," but instead direct us to the definition of that phrase as contained in MCL 750.200h,[7] which defines "harmful biological substance" as "a bacteria, virus, or other microorganism or a toxic substance derived from or produced by an organism that can be used to cause death, injury, or disease in humans, animals, or plants."[8] "Organism" is commonly defined as "any individual life form considered as an entity."[9] We take judicial notice of the fact that blood is commonly known

---

[6] MCL 777.31(1)(b).

[7] MCL 777.31(3)(a) states:

  "Chemical irritant", "chemical irritant device", "harmful biological substance", "harmful biological device", "harmful chemical substance", "harmful chemical device", "harmful radioactive material", "harmful radioactive device", and "imitation harmful substance or device" mean those terms as defined in . . . MCL 750.200h.

[8] MCL 750.200h(g).

[9] *Random House Webster's College Dictionary* (1997), p 920.

to be a means of spreading HIV.[10] We therefore conclude that HIV-infected blood is a "harmful biological substance," as defined by Michigan statute, because it is a substance produced by a human organism that contains a virus that can spread or cause disease in humans.

Accordingly, we conclude that there was sufficient evidence to support a score of 20 points for OV 1 because of Odom's exposure of the officer to a "harmful biological substance" by spitting HIV-positive blood on him.

### III. PROSECUTORIAL MISCONDUCT

#### A. STANDARD OF REVIEW

Odom argues that he is entitled to a new trial because of multiple instances of prosecutorial misconduct. Unpreserved claims of prosecutorial misconduct may only be reviewed for plain error.[11] "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings."[12] We review prosecutorial misconduct claims on a case-by-case basis, looking at the prosecutor's comments in context, and in light of the defense arguments and the relationship of the comments to evidence admitted at trial.[13]

---

[10] The Centers for Disease Control and Prevention of the United States Department of Health and Human Resources states that "HIV transmission can occur when blood . . . from an infected person enters the body of an uninfected person." *How is HIV passed from one person to another?*, <http://www.cdc.gov/hiv/resources/qa/qa16.htm> (accessed September 27, 2007).

[11] *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

[12] *Id.*

[13] *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

### B. ANALYSIS

First, Odom claims that the prosecutor improperly testified for Sergeant Watson. In response to Sergeant Watson's testifying that Odom "brawned up," the prosecutor asked what she meant by that, asking "You mean, he kind of, what, stands up straight and, kind of spreads himself out a little?" We conclude that this was a reasonable question prompted by, and in direct response to, Sergeant Watson's testimony. There was nothing improper about the question, which was only a request for a clarification.

Next, Odom claims that the prosecutor engaged in misconduct when he did not ask a witness to fully explain what a "Critical Incident Report" was or what its various parts contained. But Odom fails to explain how this alleged failure prejudiced his right to a fair trial.

Odom also claims that the prosecutor engaged in misconduct by not conceding at trial that Odom's reference to a letter that Odom had sent to a person named "Kabob" was meant to be a reference to a letter Odom had sent to a person named "Kabot," which is the prosecutor's name. But Odom himself failed to clarify this fact despite the prosecutor's direct question to Odom asking who "Kabob" was. Thus, we see no plain error here.

Finally, Odom claims that the prosecutor engaged in misconduct when he asked Odom to comment regarding the truthfulness of other witnesses.[14] But the record does not indicate that the prosecutor ever asked Odom to comment on other witnesses' truthfulness. Thus, there is no merit to this claim.

In sum, nothing Odom complains of as prosecutorial misconduct actually qualifies as misconduct.

---

[14] See *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985).

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Odom argues that he is entitled to a new trial because he was denied the effective assistance of counsel. Because Odom made no request for an evidentiary hearing or a motion for a new trial, our review of Odom's claim of ineffective assistance of counsel is limited to the existing record.[15]

### B. ANALYSIS

The right to counsel is guaranteed by the United States Constitution and the Michigan Constitution.[16] Where the issue is counsel's performance, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, if not for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable.[17] Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases.[18] There is therefore a strong presumption of effective counsel when it comes to issues of trial strategy.[19] We will not second-guess matters of strategy or use the benefit of hindsight when assessing counsel's competence.[20]

---

[15] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

[16] US Const, Am VI; Const 1963, art 1, § 20.

[17] *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 309; 521 NW2d 797 (1994).

[18] *Pickens, supra* at 325.

[19] *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997).

[20] *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Odom first claims that he was denied the effective assistance of counsel by his defense counsel's failure to object to his sentencing score for OV 1. But as indicated above, OV 1 was scored appropriately, so any objection would have been futile. There is no obligation for a defense attorney to object where such objection would be futile.[21]

Odom also claims that he was denied effective assistance of counsel by his defense counsel's failure to object to various instances of prosecutorial misconduct. But as indicated above, none of the conduct complained of by Odom amounted to prosecutorial misconduct, so there was no basis for defense counsel to object.

Odom next claims that he was denied effective assistance of counsel by defense counsel's failure to make an initial opening statement. Although Odom's counsel did not make an opening statement after the prosecutor's opening statement, Odom's counsel did make an opening statement right after the prosecution rested. The decision when to make an opening statement is a matter of trial strategy over which counsel is given wide discretion. Moreover, because Odom has not indicated how this delay prejudiced him, there is no basis to conclude that defense counsel was ineffective for delaying his opening statement.

Odom claims that he was denied effective assistance of counsel by his counsel's failure to object to false testimony given by various witnesses. But one cannot object simply because one *thinks* a witness is lying. The veracity of a witness is a matter for the trier of fact to discern.[22] Defense counsel was not ineffective for failing to object to testimony on this basis.

[21] *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

[22] *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

Odom also claims that his defense counsel was ineffective for failing to properly investigate Odom's case or prepare it for trial because defense counsel did not meet with Odom before the preliminary hearing, did not go to the prison, and did not make any effort to locate and talk to any other inmate witnesses. These claimed deficiencies are not apparent from the existing record and are, thus, not subject to review by this Court.[23]

Odom claims that his defense counsel was also ineffective for not pleading self-defense. But Odom testified at trial that he never assaulted anyone. Therefore, Odom's own testimony ran contrary to a self-defense claim. Accordingly, defense counsel was not ineffective for failing to pursue a theory not supported by Odom's own testimony.

Finally, Odom claims that defense counsel was ineffective for failing to request a change of venue from a community that was full of people who knew or were related to corrections officers, and who would then likely have a bias in favor of the corrections officers' testimony in this case. The trial court asked the pool of prospective jurors if any of them had friends or family who worked for the Department of Corrections (DOC) in Jackson County, and everyone who said they had a close connection to someone who worked at a prison was eliminated from the jury. That is a proper and effective means of dealing with the possible risk of bias. Odom's counsel was not ineffective for failing to request a change of venue.

In sum, nothing Odom complains of as ineffective assistance of counsel actually qualifies as a deficiency in his representation.

---

[23] *Snider, supra* at 423.

## V. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Odom further argues that there was insufficient evidence to convict him of assaulting the corrections officers because they lied about the assaults. To determine whether there was sufficient evidence to support a conviction, we review the evidence de novo, in the light most favorable to the prosecution, and decide whether any rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt.[24]

### B. ANALYSIS

MCL 750.197c(1) provides, in relevant part:

> A person lawfully imprisoned in a . . . place of confinement established by law for any term, . . . who, . . . through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement . . . knowing the person to be an employee . . . is guilty of a felony[.]

This Court has held that the statute clearly applies to state prisons and guards employed therein.[25]

There is no dispute that the officers in this case were employees of the Department of Corrections. There is also no dispute that Odom was lawfully incarcerated at the time of the alleged assaults. There was testimony from multiple witnesses that Odom punched two of the corrections officers in the face and spat at a third.

---

[24] *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999); *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001).

[25] *People v Wingo*, 95 Mich App 101, 104; 290 NW2d 93 (1980); see MCL 750.197c(2)(a) (defining "place of confinement" as "a correctional facility operated by the department of corrections").

Odom's argument that there was not sufficient evidence simply because of apparent contradictions in testimony or because of blanket assertions that various witnesses were lying is without merit. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses,"[26] and the trier of fact apparently found these witnesses credible. Therefore, there was sufficient evidence that Odom assaulted three corrections officers while incarcerated.

## VI. RIGHT TO SELF-REPRESENTATION

Odom argues that he is entitled to a new trial because he was denied his constitutional right to represent himself. We disagree. Every defendant has the constitutional right to waive the assistance of counsel and represent himself at trial.[27] However, a defendant must make a request for permission from the court to proceed pro se.[28] Here, Odom never requested to represent himself at trial. Therefore, there plainly was no violation of his right to self-representation, which could only have been invoked by Odom's request.

## VII. DISCLOSURE OF HIV STATUS

Odom argues that the release of his medical information to Officer Culler was illegal because he never gave consent for the disclosure of his medical history and because the court did not order Odom to have a blood test. Because this issue was not preserved below, we need only review it for plain error.[29]

---

[26] *Lemmon, supra* at 637.

[27] *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004).

[28] *Id.* at 190.

[29] *Callon, supra* at 329.

In accordance with state law,[30] the DOC policy manual requires all prisoners to be tested for HIV (unless tested already within three months).[31] Ordinarily, HIV test results are confidential.[32] However, such records may be released under limited circumstances, as provided by statute.[33] One such circumstance is when the disclosure of HIV test results is made in response to a court order and subpoena.[34] Here, the record reflects that a subpoena and order were made for disclosure of Odom's medical records. Further, a DOC employee who is exposed to the blood or body fluids of a prisoner may request that the prisoner be tested for HIV infection or HBV (hepatitis B virus) infection, or both.[35] Upon such request, the DOC may test the prisoner regardless of consent,[36] and the DOC must notify the requesting employee of the test results within two days after the DOC obtains the results.[37] Moreover, a physician or health officer may disclose information pertaining to an individual who is infected with HIV to an individual who is known by the physician or health officer to be a contact of the individual who is infected with HIV.[38] Thus, Odom's claim of illegal disclosure of his medical information is without merit.

VIII. RIGHT TO CONFRONTATION OF WITNESSES

Odom claims that he was denied his constitutional right to confront the witnesses against him when the

---

[30] See MCL 333.5129; MCL 791.267; MCL 791.267b.

[31] Policy Directive 03.04.120(W).

[32] MCL 333.5131(1) and (2); MCL 600.2157.

[33] MCL 333.5131(1).

[34] MCL 333.5131(3).

[35] MCL 791.267b(1).

[36] MCL 791.267b(4).

[37] MCL 791.267b(7); see also MCL 791.267(10).

[38] MCL 333.5131(5)(b).

trial court allowed a witness who did not testify during the preliminary examination to testify at trial. Unpreserved claims of constitutional error may only be reviewed for plain error affecting substantial rights.[39]

A defendant is entitled to confront the witnesses against him.[40]

> The right to confront one's accusers consists of four separate requirements: (1) a face-to-face meeting of the defendant and the witnesses against him at trial; (2) the witnesses should be competent to testify and their testimony is to be given under oath or affirmation, thereby impressing upon them the seriousness of the matter; (3) the witnesses are subject to cross-examination; and (4) the trier of fact is afforded the opportunity to observe the witnesses' demeanor.[41]

The witness in question, Sergeant Watson, gave testimony at trial subject to full cross-examination. Accordingly, there was clearly no violation of Odom's constitutional right to confront Sergeant Watson regardless of her presence or absence at pretrial proceedings.

### IX. RIGHT TO AN IMPARTIAL TRIBUNAL

#### A. STANDARD OF REVIEW

Odom claims that he was denied his constitutional right to an impartial tribunal because the trial court was biased against him. A determination regarding whether a party has received due process is a question of law reviewed de novo.[42] For a due process violation to

---

[39] *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

[40] US Const, Am VI; Const 1963, art 1, § 20.

[41] *People v Pesquera*, 244 Mich App 305, 309; 625 NW2d 407 (2001).

[42] *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense.[43]

### B. ANALYSIS

Odom complains that the trial court was biased against him, mostly based on his treatment during a preliminary hearing. But during that hearing, Odom repeatedly interrupted both the trial court and his own attorney, often arguing with the trial court, to the point where the trial court warned Odom to "act decently" or Odom would "sit next door and watch [the trial] on TV." In short, nothing Odom has complained of demonstrates any bias on the part of the trial court and, to the contrary, demonstrates that the trial court acted with some degree of patience with Odom's outbursts in court. Thus, Odom was not denied his constitutional right to due process before an impartial tribunal and is not entitled to relief on that basis.

### X. CONCLUSION

In sum, we conclude as follows: (1) there was sufficient evidence on the record to support the trial court's score of 20 points for OV 1, (2) none of the prosecutor's conduct Odom complained of amounted to misconduct, (3) none of defense counsel's actions Odom complained of amounted to deficient representation, (4) there was sufficient evidence to support the jury's conclusion that Odom was an inmate who assaulted three corrections officers, (5) Odom was not denied the right to represent himself because he never requested permission from the court to exercise that right, (6) the release of Odom's medical information was permissible under Michigan law, (7) Odom was not denied his right to

---

[43] *People v McGee*, 258 Mich App 683, 700; 672 NW2d 191 (2003).

confrontation because Sergeant Watson was at trial and Odom was able to cross-examine her, and (8) Odom failed to establish that the trial court was biased against him.

Affirmed.