# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RONNIE HUBBERT, by CHARLES
PITTS, Personal Representative,

UNPUBLISHED
December 4, 2014

        Plaintiff-Appellee,

v

No. 314670
Wayne Circuit Court
LC No. 07-723845-NF

AUTO CLUB INSURANCE ASSOCIATION,

        Defendant-Appellant.

Before: METER, P.J., and K. F. KELLY and M. J. KELLY, JJ.

M. J. KELLY, J. (*dissenting*).

I cannot agree that the trial court abused its discretion when it struck the introduction of the deposition of defendant Auto Club Insurance Association's medical expert, Dr. Phillip Friedman, and, because there were no other errors warranting a new trial, I would affirm. Accordingly, I must respectfully dissent.

The primary issue on appeal is whether the trial court abused its discretion when it precluded Auto Club from presenting the deposition testimony of Friedman. The court determined that Friedman's testimony should not be admitted after Friedman failed to comply with a subpoena duces tecum, which required him to turn over certain financial records; specifically, Friedman failed to provide the Estate with the documentation commanded by the subpoena concerning his compensation for providing testimony for insurance companies during the relevant time and the documents evidencing his billings for the case at issue. In making its ruling, the trial court found that Friedman's failure was willful and that the failure deprived the Estate's lawyer of the ability to effectively cross-examine him at the deposition.

In determining that the trial court abused its discretion, the majority ignores several facts that I believe are salient to the trial court's decision. Those facts are as follows.

Ronnie Hubbert first sued Auto Club in September 2007. Before Hubbert died in November 2009, Auto Club had its own expert, Edward Trachtman, D.O., see Hubbert for an "independent medical examination." Unfortunately, Trachtman died in February 2010. Despite the death of its expert more than a year earlier, Auto Club did not apparently take any steps to notify the Estate that it had hired Friedman to review Hubbert's medical records and did not offer evidence concerning his proposed opinion. The Estate apparently learned about Friedman just before the originally scheduled trial in March 2011. Because the Estate had no information

-1-

about Friedman or his proposed opinion, it moved to preclude him from testifying at trial. The trial, however, was ultimately adjourned to April 2012, which provided Auto Club with ample time to ensure that the Estate had notice of Friedman's proposed testimony.

The Estate issued a subpoena to Friedman in March 2011. In the subpoena, the Estate asked Friedman to provide it with the timesheets, invoices, and payment records arising from his work on the case for Auto Club. It also asked for copies of the 1099 forms issued to him for his work as an independent medical examiner from 2007 to the present. The parties intended to have Friedman testify by video deposition and the Estate wanted the records before Friedman testified.

Approximately a week before the start of trial, the Estate renewed its subpoena for Friedman's financial records and Auto Club responded by seeking a protective order for the requested records. The trial court heard arguments on the motion for a protective order on the first day of trial in April 2012. During oral arguments, the Estate's lawyer expressed exasperation that Auto Club scheduled Friedman's deposition for the first day despite knowing about the trial dates for "many months" and after two or three adjournments. He further indicated that he still did not have an adequate disclosure of Friedman's proposed testimony. Despite this, the Estate's lawyer was willing to proceed and asked the trial court to deny Auto Club's motion for a protective order. The trial court determined that the requested financial records were relevant to showing Friedman's "impartiality or lack thereof" and should be readily available. As such, it denied the motion for a protective order, the unquestionable result being that Friedman was to produce the subpoenaed documents at the deposition. The parties proceeded to try the case after lunch and then conducted Friedman's deposition that same evening.

At his deposition, Friedman imperiously announced that he did not bring the records and that he had made no effort to comply with the original subpoena or the renewed subpoena. He did not offer any justification for failing to provide the records except to state that—with regard to his 1099 forms—he does not know how the forms are handled by his staff or accountant. He nevertheless admitted that he could have obtained information concerning his compensation from "independent medical examinations" during the period at issue, but did not. It was also clear that he could have provided the records of his time spent on the case at issue, but chose not to do so. It was only after the deposition at issue that he finally provided an invoice for his work.

Before Friedman's deposition could be played for the jury, the Estate moved to strike it. The Estate's lawyer argued that the court should strike the deposition because he was unable to effectively cross-examine Friedman on his potential bias without the requested financial records. In response, Auto Club's lawyer read an affidavit in which Friedman averred that his accountant does not keep copies of his 1099 forms. Auto Club's lawyer also argued that Friedman provided adequate testimony on the issue of his compensation.

The trial court expressed shock that any accountant would not keep the 1099 forms (the court opined that Friedman should fire his accountant if that were the case). The trial court also reminded Auto Club's lawyer about the state of modern technology and expressed that—even disregarding the original subpoena from a year earlier and the renewed subpoena from a week earlier—Auto Club could have notified Friedman on the first day of trial and ensured that he

provided some of the requested documents at his deposition. It then found that Friedman chose not to comply with the subpoena even though he had the ability to do so and that his noncompliance was willful. The court also agreed that Friedman's refusal to provide the records inhibited the Estate's ability to test his credibility. The trial court recognized that preclusion was an extreme sanction, but nevertheless concluded that it was warranted under the circumstances.

In its analysis, the majority makes much of the fact that the subpoena applied to Friedman, not Auto Club. Noting that MCR 2.313(B) allows sanctions against a party that fails to comply with a discovery order, the majority states that there is no evidence that Auto Club or its representatives actually failed to comply with the subpoena. [1] This analysis, however, ignores the relationship between Auto Club and Friedman and ignores the fact that Auto Club actually took action to protect Friedman from having to disclose his finances.

Auto Club hired Friedman to review the relevant records and offer an opinion. Because Friedman became involved at Auto Club's request and with the specific promise that he would be paid for his time and effort, even though Friedman was not an agent of Auto Club, his relationship with Auto Club cannot be equated with one involving a third-party witness (such as a res gestae witness) with whom it has no relationship. See *Barnett v Hidalgo*, 478 Mich 151, 163; 732 NW2d 472 (2007) (discussing the nature of the relationship between a party and its hired experts). Rather, Auto Club plainly retained the limited right to direct and control Friedman's continued participation in the litigation (if not his ultimate opinion), see *id.* at 163 n 7, and, if it became unhappy with his compliance, it could have terminated its business relationship with him and hired a different expert.

It is this business relationship which is at the very heart of this issue on appeal. Opposing counsel had the right to cross-examine Friedman on the nature of his relationship with Auto Club—and the insurance industry in general—to show that he had a vested interest in providing opinions that would make it more likely that he would be hired in the future. [2] See MRE 611(c);

---

[1] The majority fails to mention that at the trial Auto Club essentially conceded that the trial court had the authority to impose a discovery sanction against it and further agreed that the court should make its determination by analyzing the factors stated in *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).

[2] The majority allows Friedman to ignore the command of the subpoena—a subpoena the trial court earlier that day ordered compliance with—by implying that the Estate's lawyer had enough information without everything commanded in the subpoena; that the Estate's lawyer "elicited testimony establishing Dr. Friedman's bias." But this raises two questions. The first is: just who is in charge of the courtroom, the trial judge or Friedman? Friedman was *ordered* to produce this information, not invited. A witness does not determine which subpoenas he will and will not comply with, the judge does. Secondly, who are we to determine whether the partial information supplied was enough to effectively cross-examine Friedman? In the context of the criminal law and the determination of ineffective assistance of counsel, this court has gone to great lengths in establishing that trial counsel is to be given wide discretion in determining his own trial strategy

*Wilson v Stilwill*, 411 Mich 587, 600-601; 309 NW2d 898 (1981). And opposing counsel does not have to accept Friedman's word on the matter; the Estate's lawyer had the right to make a reasonable request for and be provided the financial documents that independently demonstrate Friedman's pecuniary interest in continued employment as an expert. See *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 36; 594 NW2d 455 (1999) (stating that Michigan has a strong commitment to open and effective discovery practice). Friedman's financial records might have shown that he had a powerful—even if subconscious—motive to provide testimony in support of Auto Club's position at trial, notwithstanding the evidence to the contrary. Moreover, Auto Club cannot completely disavow any responsibility for Friedman's failure to provide his financial records. Given its extensive involvement with the procurement of expert opinions, Auto Club must know that its experts may be asked to discuss their compensation for offering expert testimony and asked to provide the underlying financial documentation. And, once it became aware of the subpoena, Auto Club should have taken reasonable steps to ensure that Friedman complied.

It is also highly significant that when Friedman chose to challenge the subpoenaed records, he did not retain his own private counsel, or even the counsel for the company that employed him, Medical Evaluation Specialists. Rather, it was Auto Club's counsel who represented him in that challenge. And the withheld information could very well have shown additional bias, such as the number of times the Auto Club or its trial counsel in this action had retained Friedman in the past.

The majority nevertheless appears to provide a categorical ban on a trial court's ability to punish witnesses who fail to comply with the court's orders: it cannot preclude the witness from offering testimony; it may only hold the witness in contempt. This rule apparently applies without regard to the severity of the noncompliance or the prejudice occasioned by it—ostensibly because it would be unfair to punish a party for his or her expert's refusal to comply with court orders. But even if Friedman could be said to be a true third-party witness over whom Auto Club had absolutely no control, the trial court nevertheless had the inherent authority to remedy the harm occasioned by Friedman's failure to comply with the court's orders by precluding him from testifying at trial—even if that decision indirectly harmed Auto Club. See *Maldonado v Ford Motor Co*, 476 Mich 372, 375-376; 719 NW2d 809 (2006) (holding that trial courts have the inherent authority to control the proceedings before them, which includes the power to issue any order proper to the orderly and expeditious disposition of cases). Consequently, the issue before this trial court is not whether the trial court had the authority to act as it did, but whether its decision fell within the range of reasonable and principled outcomes under the facts found by the trial court. *Id.* at 388 (stating that this Court reviews a trial court's exercise of its inherent authority to control the proceedings for an abuse of discretion and providing that a trial court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes).

and that it is a heavy burden to overcome that discretion. See *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007). The same deference should be given here.

The trial court found that Friedman's failure to comply with the subpoena was willful. Because there was record evidence to support that finding, it was not clearly erroneous. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008) (providing that this Court reviews for clear error the factual findings underlying a trial court's decision).

Friedman had more than a year to provide his financial records to the Estate. Even assuming that he could be excused for failing to comply with the initial subpoena given the repeated adjournments, the Estate renewed the subpoena a week before trial, which was ample time to collect the records and provide them to the Estate before his deposition. Despite this, Friedman chose not to collect the records. At his deposition, Friedman contended that he never even saw the subpoena, explaining that he had staff to handle such things.[3] But despite that claim, he testified that he had extensive experience with subpoenas: "I have a long history of doing this. And I have had plaintiff[s'] attorneys subpoena every report I have written, they wanted to show a bias, and after a couple hundred reports, they could not show any bias, and then they ceased." This testimony strongly supports the contention that Friedman understood the import of the subpoena and had the ability to comply with it, but chose not to do so. Instead, he apparently relied on Auto Club to move for a protective order in order to ensure that he would not have to disclose his finances. And let us not forget that this took place in the middle of the trial.

The fact that Auto Club sought the order demonstrates that it was aware of the issue and supported Friedman's efforts to avoid disclosure. It also belies the notion that Auto Club had no ability to ensure that Friedman made a reasonable effort to comply with the subpoena. Auto Club could have asked Friedman to prepare as many records as reasonably possible in the event that the trial court denied the motion, but it did not do so. As the trial court aptly stated, Auto Club could have contacted Friedman in the hours before his deposition to warn him that the motion for a protective order had been denied and asked him to provide whatever records he might be able to obtain in the interim before his deposition. Auto Club did not, however, make any effort to ensure that its expert complied with the subpoena and Friedman continued to ignore it. As a result, the Estate had no ability to test Friedman's credibility on cross-examination at the deposition short of asking him about his finances and accepting his word on the matter.

Friedman's noncompliance and Auto Club's failure to take steps to ensure that its witness minimally complied with the order also clearly prejudiced the Estate's ability to test Friedman's credibility. At his deposition, although admitting that he has worked for defense firms on thousands of cases, Friedman provided only general information about his compensation from insurance companies. He stated that he charges $450 per hour with a minimum charge of $450. He also stated that his work as an independent medical examiner comprised about 40% of his practice. Had Friedman complied with the subpoena even in part, the Estate might have been able to show that he had a powerful financial incentive to skew—whether consciously or

---

[3] Notably, no one disputes that the Estate served the subpoena on Friedman and, for that reason, it was his responsibility to comply with it—not his staff's.

unconsciously—his opinion to favor his clients. Without the records to fully explore his compensation, the Estate had to take Friedman's word that his opinion was "not for sale." For all the Estate knew, Friedman might have received tens or even hundreds of thousands of dollars in income from providing expert testimony on behalf of insurance companies.

Under the circumstances, the trial court also had little choice but to preclude Friedman's testimony to rectify the prejudice. Auto Club, for whatever reason, waited until the first day of trial to schedule Friedman's deposition. Had Auto Club scheduled the deposition earlier or sought the protective order earlier, the dispute concerning Friedman's financial records could have been resolved before the middle of trial. By waiting until the last minute and then moving for a protective order, Auto Club essentially created the conditions necessitating an extreme remedy. See *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (recognizing that preclusion is an extreme remedy for misconduct). The trial court had already repeatedly postponed trial and the parties had completed Friedman's deposition. The court was thus confronted with a choice of evils: it could admit the deposition even though the Estate did not have a full and fair opportunity to cross-examine Friedman, it could again postpone the trial for an indefinite period to allow for the production of the documents and a new deposition with a proper cross-examination, or it could preclude the admission of Friedman's deposition. Under the circumstances, it was within the range of reasonable and principled outcomes for the trial court to choose preclusion. It was Friedman's willful noncompliance—along with Auto Club's negligent handling of its witness—that led to the defective deposition.

Under the facts of this case, I conclude it was reasonable for the trial court to preclude the admission of Friedman's deposition. Moreover, after examining the remaining issues on appeal, I conclude there were no errors warranting relief. For these reasons, I would affirm.

/s/ Michael J. Kelly