# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TYRELL TREMAINE SANDERS,

      Defendant-Appellant.

UNPUBLISHED
January 11, 2018

No. 335370
Washtenaw Circuit Court
LC No. 16-000300-FC

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction of armed robbery, MCL 750.529. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 6 to 20 years' imprisonment. We affirm.

## I. BACKGROUND

This case arises out of an armed robbery that occurred on December 14, 2015, in Ypsilanti, Michigan. At approximately 3:00 a.m. that day, the victim went to a nearby store called Kampus Korner to buy a pack of cigarettes. After purchasing the cigarettes, the victim left the store and headed back to his dorm on the nearby campus of Eastern Michigan University (EMU). On his way home, the victim was stopped by two men who propositioned him to buy marijuana from them. The victim refused and continued to his dorm. The same two men then followed the victim and robbed him at gunpoint. Officers from the EMU Police Department responded to the call and immediately began to patrol the area for suspects. Officers picked up Ryan Kelly and Malik Wilson. Later that morning, the victim went with police to identify possible suspects. The victim identified Kelly as the person who held the gun to him, but did not recognize Wilson as being involved in the robbery.

After the arrests of Kelly and Wilson, Officer Michael Thomson of the Ypsilanti Police Department's Detective Bureau testified that he noticed a voicemail left on Kelly's cell phone from a "Terrel or Tyrell." At trial, after the prosecutor asked if Officer Thomson remembered the contents of that voicemail, defense counsel objected on hearsay grounds. The trial court overruled the objection, and Officer Thomson testified that the voicemail was about an iPhone and some "cray crack," an apparent reference to crack cocaine.

-1-

An EMU Detective, Charles Mosher, testified that he used a database called CLEMIS to search Kelly's prior police contacts. There were at least two prior contacts discovered where Kelly was in the company of defendant. Detective Mosher then searched for defendant's contacts in CLEMIS that showed defendant had two previous contacts with Kelly and that he had another contact from "a panic alarm or something." The address associated with that panic-alarm contact was 9-50 Railroad, Apartment 119, where police recovered some of the victim's stolen property. Defendant's wallet was also found at this apartment.

At trial, the prosecutor spent substantial time with a detective going over surveillance videos recovered from EMU, Kampus Korner, and the Peninsula Place apartment complex. After watching all the videos, Michael Townley, defendant's probation officer, was asked to identify the male in the videos with a red bandana and black coat. Townley identified the person as defendant.

At trial, the prosecutor avoided revealing Townley's status as defendant's probation officer. Defense counsel, however, opened up the cross-examination of Townley by telling the jury that Townley was defendant's probation officer. Defense counsel then attempted to impeach Townley's identification of defendant by asking questions that highlighted that Townley supervised many probationers and only met with defendant twice.

Defendant was eventually located in Romulus, Michigan, by US Marshalls on February 5, 2016. During defendant's interview, defendant stated that he was at 9-50 Railroad, Apartment 119 on December 14, 2015, visiting the occupants of that apartment but that he left around 11:45 p.m. or midnight. The jury found defendant guilty of the armed robbery, and this appeal followed.

## II. ANALYSIS

*The Reference to Crack Cocaine Was Not Hearsay.* On appeal, defendant first argues that he was denied a fair trial due to the introduction of Detective Thomson's hearsay testimony that associated defendant with crack cocaine. We review the trial court's admission of evidence for an abuse of discretion. *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

Hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay statements are presumptively inadmissible, MRE 802, subject to several exemptions and exceptions, MRE 803-805, none of which directly apply to this case. Nonetheless, we conclude that the challenged reference was not hearsay and was therefore not subject to the hearsay ban.

A statement which is not offered to prove the truth of the matter asserted is not hearsay. A specific instance of this concept is that a "statement offered to show why police officers acted as they did is not hearsay." *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Here, the challenged reference to crack cocaine was not offered to prove that defendant was associated with cocaine but to show why detectives pursued defendant and to establish a chain of events leading to defendant's arrest. Because the challenged statement was not hearsay, and defendant has not shown that the limited reference to cocaine was unduly prejudicial, see MRE 403, the trial court did not err in admitting the statement.

*Defendant Was Not Denied the Effective Assistance of Counsel.* Next, defendant argues that he received ineffective assistance of counsel because defense counsel told the jury about defendant's probationary status and because defense counsel failed to object to the reference made to a "panic alarm." We review defendant's unpreserved claims of ineffective assistance of counsel for errors "apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To demonstrate ineffective assistance of counsel, a defendant must (1) "show that counsel's performance was deficient" and (2) "show that the deficient performance prejudiced the defense." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (internal citation and quotation marks omitted). Counsel's performance is deficient when it falls below an "objective standard of reasonableness." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defense counsel is given broad discretion in matters of trial strategy, and defendant must overcome "a strong presumption of effective counsel when it comes to issues of trial strategy." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). A defendant shows prejudice by showing a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different. *Id.*

Defendant first argues that defense counsel's introduction of other-acts evidence—that defendant was on probation—was inadmissible error under MRE 404(b) and unfairly prejudicial. We disagree. Here, the challenged evidence concerning defendant's probationary status was not offered for propensity purposes and, therefore, MRE 404(b) is not implicated. To the extent that defendant argues the evidence was unfairly prejudicial under MRE 403, because defense counsel was the proffer of the evidence, defendant's argument is better addressed in the context of defendant's claim of ineffective assistance of counsel. Defendant, however, has not overcome the presumption that defense counsel's decision to reveal defendant's probationary status was sound trial strategy and is not entitled to relief on this claim. Defendant's identity as the perpetrator of the robbery was the main issue at trial. Defense counsel revealed defendant's probationary status only so that counsel could explore Townley's limited interaction with defendant. Through this questioning, defense counsel was able to reveal that Townley supervised many probationers and only interacted with defendant twice. Defense counsel limited his questions to those that would discredit the witness and did not discuss the details of defendant's probation or other crimes. That defense counsel's strategy did not ultimately result in a verdict in defendant's favor, does not mean that the strategy was not sound. See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Defense counsel was not ineffective for revealing defendant's probationary status.

Next, defendant argues that the prosecutor's use of the phrase "panic alarm" rather than the more commonly used phrase "911 call" was unfairly prejudicial and that defense counsel was ineffective for failing to challenge the reference. We disagree. The record in this case reveals that the phrase "panic alarm" was the code used in the CENTIS computer system the detectives used to research defendant's police contacts. As used before the trial court, the phrase "panic alarm" was blame-neutral. No one stated whether defendant was the reason for the panic alarm or whether defendant himself called in the alarm. The evidence of the panic alarm was limited to showing that defendant was associated with the residence in which some of the stolen items were found and to explaining the sequence of events leading to defendant's arrest. Accordingly, we conclude that the limited references to a "panic alarm" were not unduly prejudicial and that

defense counsel was not ineffective for failing to challenge the phrase. To the extent that the phrase "911 call" would have been less prejudicial than the phrase "panic alarm," because defense counsel would have drawn further attention to the "panic alarm" reference by objecting, we conclude that defense counsel's decision not to object was sound trial strategy. See *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008).

Affirmed.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle