# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN KENNEDY GARNER,

Defendant-Appellant.

UNPUBLISHED
October 16, 2018

No. 338568
Kalamazoo Circuit Court
LC No. 2016-001452-FH

Before: SAWYER, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of involuntary manslaughter, MCL 750.321. He was sentenced as a fourth habitual offender, MCL 769.12(1)(a), to a term of 25 to 40 years' imprisonment. Defendant appeals as of right. We affirm.

## I. FACTS

While at a Kalamazoo park on September 7, 2016, defendant and Charlotte Simmons discovered that the victim, George Carlisle, had taken Simmons's purse. Simmons and defendant confronted Carlisle and he eventually admitted that he took the purse. Simmons testified that she and defendant became upset, that Carlisle eventually "got all raged and hysterical," and that Carlisle and defendant argued for approximately 5 to 10 minutes and then began physically fighting one another. Simmons said that defendant first pushed Carlisle on the side of his head, that Carlisle then pushed defendant, that defendant pushed Carlisle again, and that the two men fought for about three to five minutes. Simmons stated that defendant hit Carlisle a few times in the face, and then Carlisle hit defendant in the face "like a fight."

Defendant then told Joe Perry that Carlisle had attempted to take Simmons's purse, that defendant "had to handle that," and that he needed to put Carlisle in his place. Perry then went to check on Carlisle and found that Carlisle was unconscious and had a pool of blood on his shirt and stomach and blood on his pants. Carlisle was drooling, blood was coming out of his mouth, and his head was cocked to the side where blood was pooling. Perry flagged down a police officer.

Carlisle was taken to the hospital where an emergency room physician determined that he was in an unresponsive state, and that he suffered severe facial trauma to the mouth and

-1-

significant neurologic damage. The physician opined that the swelling and bleeding was consistent with being struck with an object, which could have been a fist. Carlisle died at the hospital.

When Kalamazoo Police Detective Joe Paul first interviewed Simmons, she stated that she saw Carlisle being assailed by an unknown male. She eventually admitted that defendant started the altercation by pushing Carlisle, and estimated that defendant hit Carlisle approximately four times. Simmons told Paul that defendant "drilled him up."

A passing jogger testified that he had observed a younger man standing in front of a bench who seemed to be acting aggressively toward an older man sitting on the bench. When he jogged over to the group, he saw that the older man was covered in blood but appeared to be smiling; he had "never seen somebody so beat" and was surprised the man could move. The jogger concluded that he had misread the situation after the younger man said that he had called the police.

Defendant asserted that he was acting in self-defense. He testified that Carlisle became belligerent and hostile at the accusation that he had taken Simmons's purse and that Carlisle swore at him and pointed his finger in his face. Defendant testified that he "didn't want [Carlisle] to poke [him] in the face like that." Defendant stated that he pushed Carlisle back because Carlisle was aggressive and poking him in the head, and he feared that Carlisle's poke would "seriously injure" his eye. He testified that after he pushed Carlisle, Carlisle hit him, and he struck Carlisle four to five times in the face in an attempt to stop Carlisle from "punching at" him. Defendant testified that he never intended to injure Carlisle.

## II. ANALYSIS

Defendant first argues that his constitutional right to due process was violated because the prosecution failed to produce sufficient evidence to exclude the possibility of self-defense beyond a reasonable doubt. We disagree. First, the jury could have concluded that defendant did not produce evidence to establish the legal elements necessary to establish a defense of self-defense. Second, even if defendant did produce satisfactory evidence to establish his defense, the jury could have concluded that the prosecution presented sufficient evidence at trial to disprove self-defense beyond a reasonable doubt.

A challenge to the jury's verdict is a challenge to the sufficiency of the evidence, and such a challenge is reviewed de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Oros*, 320 Mich App 146, 152; 904 NW2d 209 (2017). In reviewing whether a conviction is supported by sufficient evidence, this Court examines the evidence presented to the jury in a light most favorable to the prosecution to determine whether a jury could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *Gaines*, 306 Mich App at 296. The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The scope of review is the same whether the evidence is direct or circumstantial. *Nowack*, 462 Mich at 400.

To convict defendant of involuntary manslaughter, the prosecution had to prove that defendant (1) caused a death, (2) the death was without legal justification or excuse, (3) and that defendant was acting in a grossly negligent manner or committing an unlawful act that was inherently dangerous to human life. *In re Gillis*, 203 Mich App 320, 321; 512 NW2d 79 (1994). Self-defense may be raised as a defense, or a legal justification, under the second element of involuntary manslaughter. *In re Gillis*, 203 Mich App at 321. "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (citations omitted).

Defendant argues that there was insufficient proof that the death was without legal justification or excuse. Specifically, defendant raises a self-defense argument. To analyze this element of involuntary manslaughter, *In re Gillis*, 203 Mich App at 321, this Court must first determine whether defendant satisfied his initial burden of producing some evidence from which a reasonable jury could have concluded that the elements necessary to establish a prima facie defense of self-defense existed.

Defendant stated that he pushed Carlisle back because Carlisle was aggressive and poking him in the head and he feared that Carlisle's poke would "seriously injure" his eye. He claimed that after he pushed Carlisle, Carlisle hit him. Defendant stated that he struck Carlisle four to five times in the face in an attempt to stop Carlisle from "punching at" him. While this testimony might be sufficient to meet defendant's initial burden and shift the burden to the prosecutor to disprove self-defense, the inquiry does not end there. Evidence was also presented at trial that defendant started the physical altercation by pushing Carlisle. Thus, a reasonable jury could have found that defendant should have attempted to move away from Carlisle's alleged pokes, or was disqualified from defending himself on the grounds of self-defense because he actually started the altercation.

A reasonable jury could also have found that from the moment defendant chose to push Carlisle, defendant was engaged in a battery on him and continued to batter him by pushing and punching him repeatedly. A "battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004). Therefore, a battery is the successful accomplishment of an "attempted-battery" assault. *Id*. A reasonable jury could have relied on defendant and Simmons's testimony about defendant's intentionally pushing and punching Carlisle to find that defendant committed a battery on Carlisle.

Defendant implicitly asserts that his belief that he had to use deadly force to prevent death or great bodily harm was reasonable. Defendant does not argue that he honestly and reasonably believed that his life was in danger but suggests that he was protecting himself from great bodily harm by protecting himself from being poked in the eye. It is well-settled that, " '[t]he killing of another in self-defense is justifiable. . . if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm.' " *People v James*, 267 Mich App 675, 677; 705 NW2d 724 (2005), citing *People v Fortson*, 202 Mich App 13, 19-20; 507 NW2d 763 (1993). But the jury could have justifiably concluded that defendant's purported fear that a poke to the eye would cause imminent danger to

defendant's or Simmons's life, or that it would cause him or Simmons serious bodily harm, was not reasonable. A person may not kill or seriously injure a person to defend against what seems like a threat of minor injuries. CJI2d 7.15(4). That is, the jury could reasonably conclude that pushing and repeatedly punching an older man to the point of profuse bleeding and facial trauma is not a justifiable response to poking one in the head, even if one may fear that the man may cause damage to their eye.

As noted above, if defendant had satisfactorily established the elements of self-defense, the prosecution would have had "to exclude the possibility of self-defense beyond a reasonable doubt." *Stevens*, 306 Mich App at 630 (citations omitted). In viewing evidence in a light most favorable to the prosecution, it must be concluded that the prosecution did so. Moreover, the jury could have concluded beyond a reasonable doubt that there was no honest and reasonable belief that deadly force was necessary to neutralize the situation.

In a Standard 4 brief, defendant argues that he was deprived of his right to constitutional due process because the prosecution purportedly did not file a timely notice of its intent to seek a sentencing enhancement. Because defendant failed to preserve this issue, review is for plain error that was outcome determinative. *People v Odom*, 276 Mich App 407, 420-421; 740 NW2d 557 (2007).

A defendant has a fundamental due process right to know the nature and cause of the accusations being made against him, and this right is guaranteed by the federal and state constitutions, as well as by statute. US Const, Am VI, XIV; Const 1963, art 1, § 20; MCL 767.45. Here, a felony warrant was issued on October 25, 2016. Defendant was arraigned in district court on October 26, 2016. "An arraignment on the warrant has several functions: it provides formal notice of the charge against the accused; the magistrate informs the accused of his right to counsel and inquiry is made to determine whether he is in need of appointed counsel; the preliminary examination may be waived or set for a certain date; and the arraigning judge may fix bail." *People v Thomason*, 173 Mich App 812, 815; 434 NW2d 456 (1988), quoting *People v Killebrew*, 16 Mich App 624, 627; 168 NW2d 423 (1969). Defendant's preliminary examination in front of the district court was held on November 15, 2016. He was apparently bound over since on November 18, 2016, the prosecution filed a felony information against defendant in circuit court. On November 18, 2016, the prosecution also filed a notice of its intent to seek a sentencing enhancement due to defendant's status as a fourth habitual offender.

Defendant argues that the prosecution failed to file the notice within 21 days *after the arraignment on the warrant* on October 26, 2016, and therefore failed to comply with MCR 6.112(F). However, there is a distinction between the initial arraignment on the complaint or warrant, MCR 6.104, and a subsequent arraignment on a felony information filed in circuit court, MCR 6.113.

MCL 769.13 governs notice procedures for seeking an enhanced sentence for habitual offenders under MCL 769.12, and it provides that the prosecuting attorney must file

> "a written notice of his or her intent to do so *within 21 days after the defendant's arraignment on the information* charging the underlying offense or, if arraignment

is waived, within 21 days after the filing of the information charging the underlying offense. [Emphasis added.]

MCR 6.112(F) similarly provides "[t]he notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived. . . within 21 days after the filing of the information charging the underlying offense."

In this case, the prosecution filed the information and the habitual notice on the same day—November 18, 2016—thereby complying with the 21-day notice requirement set forth above. There is no indication from the record that defendant was arraigned again in circuit court. Circuit courts are permitted by the Michigan Supreme Court to eliminate arraignments by administrative order. MCR 6.113(E) provides:

> A circuit court may submit to the State Court Administrator pursuant to MCR 8.112(b) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the defendant a copy of the information and any notice of intent to seek an enhanced sentence, as provided in MCR 6.112(F).

The Ninth Circuit Court has entered an administrative order eliminating circuit court arraignments in certain circumstances as permitted by MCR 6.113(E). 9th Circuit LAO 2013-03.

MCL 769.13 and MCR 6.113 specifically reference the filing of an *information* or an arraignment *on the information* in circuit court as a prerequisite for the application of the 21-day rule. They notably do not reference a warrant or complaint filed in district court. Presuming there was no arraignment in circuit court, for defendant's claim to succeed, the prosecution would have had to file the notice of sentencing enhancement 21 days after November 18, 2016, the day it filed the information. Here, the notice was filed on November 18, 2016. MCL 769.13; MCR 6.112(F). Accordingly, defendant's claim fails because the prosecution did not give late notice of its intent to seek a sentencing enhancement. There was no plain error.

Affirmed.


/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola