# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EVEREGE VERNOR DICKENS,

Defendant-Appellant.

UNPUBLISHED
August 25, 2015

No. 321377
Wayne Circuit Court
LC No. 13-009944-FC

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of first-degree felony murder, MCL 750.316(1)(b), assault with intent to rob while armed, MCL 750.89, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for his role as the getaway driver in an attempted armed robbery that left the victim dead. Defendant raises several challenges to his trial counsel's performance, the sufficiency of the evidence supporting his convictions, and the speed with which he was brought to trial. These claims all lack merit and we affirm.

## I. BACKGROUND

At 7:00 p.m. on April 9, 2012, DaJuan Thomas was fatally shot twice in the back while standing outside the door of a liquor store in Detroit. Video surveillance showed that someone driving a blue Crown Victoria dropped off the still-unidentified shooter and picked him up after the offense. The Crown Victoria in the footage was missing its front hubcaps, had unusual custom chrome pieces on the door posts, and the rear body had been replaced with that of a Mercury Grand Marquis. Neither the vehicle's driver nor the shooter was identifiable in any video footage. One camera revealed that the shooter was wearing a black Chicago Bulls cap, however.

At 2:00 p.m. the following day, defendant summoned police assistance to the Evergreen Road exit ramp from I-96. Someone had fired shots at his vehicle while he travelled on the expressway. Officers impounded the car because it matched the description of the one used in the April 9 shooting. A black Chicago Bulls cap was found in the vehicle's trunk. Defendant was not immediately charged for his role in the shooting.

When defendant's car was impounded, the mother of his child, Chanelle Boyer, was with him. Later in 2012, while defendant was incarcerated on unrelated charges, he contacted Boyer

-1-

from a jailhouse telephone and the conversation was recorded. Defendant told Boyer not to speak to the police about the April 10 incident, or the April 9 shooting. Defendant further instructed Boyer that his friend "Pistol" would bring her a Pelle coat and that she should dispose of it. Boyer avoided police contact for nearly a year after the shooting. When officers were finally able to interview her, Boyer described that defendant informed her that he and a friend tried to rob a man of his wallet but were unsuccessful. Defendant had expressed his assumption that the April 10 expressway shooting was committed in retribution. Boyer also identified defendant's vehicle in the surveillance footage. She was unable to identify the shooter as his face was not visible in the video.

Based on their suspicions that defendant was the driver of the Crown Victoria at the time of the shooting, officers used cell phone tower information to triangulate the location of defendant's cell phone at that time. At the time of Thomas's shooting, defendant's cell phone was within the usage reach of the tower closest to the liquor store and therefore was within a half mile to a whole mile of the shooting.

Defendant claimed that he could not have been at the scene of the shooting because he had loaned his vehicle to his friends "Pistol" and "Mikey" and he was at a hotel enjoying a romantic tryst with Marquisha Profit. Defendant's mother and sister corroborated that defendant loaned his car to friends and that Profit picked defendant up from his mother's house. Defense counsel could not locate Profit to testify at trial. Ultimately, the jury rejected defendant's claimed alibi and convicted him as charged.

## II. ASSISTANCE OF COUNSEL

Through appellate counsel, defendant contends that his trial counsel was ineffective in failing to adequately investigate his alibi defense. In a brief filed in propria persona pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises a bevy of other challenges to counsel's performance. Defendant did not seek a new trial below, but instead requested that this Court remand for a *Ginther*[1] hearing to develop his claims. This Court denied defendant's motion for failure to show "that further factual development of the record or an initial decision of the trial court is necessary at this time to proper review of his issues on appeal." *People v Dickens*, unpublished order of the Court of Appeals, entered October 2, 2014 (Docket No. 321377). Defendant again requests remand for a *Ginther* hearing in his Standard 4 brief. We continue to find such a hearing unnecessary. Accordingly, our review is limited to mistakes apparent on the existing record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

NW2d 246 (2002). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id.* The defendant must overcome the additional presumption that counsel's decisions were sound trial strategy. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Counsel enjoys great discretion in matters of trial strategy and tactics. *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). This Court does not substitute its judgment for that of counsel regarding matters of trial strategy, nor does it assess counsel's performance with the benefit of hindsight. *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008).

## A. ALIBI DEFENSE

Defendant's main challenge to trial counsel's performance is his failure to adequately investigate defendant's defense that he was with Profit at a hotel during the time of the shooting. He also challenges counsel's failure to present Profit as a witness. He reiterates these claims in his in pro per appellate brief.

Defense counsel has a duty to undertake reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Any choice to limit an investigation "is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks and citation omitted). The failure to conduct an adequate investigation comprises ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Id.* "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). A defense is substantial "if it might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant cannot establish reversible error in this regard. Before trial, counsel presented a notice of alibi defense listing Marquisha Profit from Atlanta, Georgia and "Tia (last name unknown)" from "Detroit, MI (State Fair and John R area)" as witnesses.[2] On the first day of trial, the prosecutor complained that he had been given no information to contact and interrogate these witnesses. Defense counsel indicated that his investigator had been searching for the witnesses and his efforts were ongoing, "but without an address, [the investigator had not] been able to [locate them]." Counsel stated that he was unable to provide addresses and phone numbers to the prosecutor or the investigator because defendant did not possess that information.

---

[2] Defendant has abandoned any claims connected to "Tia" on appeal.

On appeal, defendant provided an affidavit from Profit, indicating that she "believe[d]" she "spent the night" with defendant on April 9 because she remembered "spending every night" with defendant around the time that "his car was shot." Profit indicated that defendant's trial counsel never contacted her.

Defendant now contends that he did provide Profit's address to defense counsel. However, defendant made no contemporaneous attempt to correct counsel when he stated otherwise before the trial court. Profit did not assert in her affidavit that defense counsel had her contact information, only that counsel did not contact her. Such contact would of course be impossible if defendant had not provided her address, phone number, or other contact information. Accordingly, based on the existing record, defendant cannot establish that counsel failed to make adequate efforts to locate the witness or failed to conduct a reasonable investigation.

In any event, Profit's affidavit does not establish that her testimony would have changed the outcome of the proceedings. Profit "believe[d]" but was not certain that she spent the night with defendant on April 9. Spending the night together would not have prevented defendant from committing the offense at 7:00 p.m. And Profit did not corroborate that defendant had loaned his car to friends at the time of the shooting.

In his Standard 4 brief, defendant also contends that he was prejudiced because the defense investigator never testified or provided a report on his efforts to locate Profit. Presumably, defendant believes that the investigator would corroborate defendant's assertion that he provided Profit's contact information to trial counsel. Defendant has not presented an affidavit from the investigator or otherwise supported his claim and therefore cannot establish error or prejudice. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (the defendant "bears the burden of establishing the factual predicate for his [ineffective assistance] claim"). Defendant further complains that defense counsel failed to inform the trial court that the defense investigator refused to communicate, investigate res gestae witnesses, or otherwise perform duties for the defense. However, the record belies this assertion as counsel indicated that the investigator's efforts to locate the witness were ongoing. There simply is no support for defendant's claim that counsel (or the investigator) sat on information that could have been used to locate Profit.

B. STANDARD 4 CLAIMS

Defendant also raises several challenges to trial counsel's performance in pro per. Defendant presents most of these arguments in a cursory fashion without sufficient development to permit meaningful review. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Despite these deficiencies, we will review the issues raised as thoroughly as possible.

Defendant challenges counsel's failure to secure various experts to rebut the prosecution's evidence against him. Specifically, defendant believes that defense experts were required to analyze the security footage and jailhouse telephone recordings, to distinguish the

vehicle in the footage from defendant's vehicle, and to better triangulate the position of his cell phone during the shooting. As noted, the failure to call a witness comprises ineffective assistance only if it deprives the defendant of a substantial defense, *Payne*, 285 Mich App at 190, i.e., a defense that may have made a difference in the trial's outcome, *Chapo*, 283 Mich App at 371. Defendant failed to establish that the proposed experts could have supported his case, especially as Boyer testified regarding the jailhouse telephone calls and identified defendant's car in the surveillance footage. Defendant admitted at trial that he made the jailhouse calls to Boyer, so no voice recognition expert could have saved his defense. Moreover, defendant has not even preliminarily shown that additional analysis of the cellular tower data could have plotted his cell phone's location with more accuracy. Defendant also asserts that counsel should have secured "expert tests," including gunshot residue and fiber analysis, of his clothes, the vehicle, and the cap found in his trunk. As no one claims that defendant fired the fatal shots, gunshot residue tests would have been useless. Had testing revealed someone else's DNA on the Chicago Bulls cap found in defendant's trunk, defendant still would not have been exonerated for his role in the shooting. Defendant was accused as the getaway driver, but the shooter allegedly wore the cap. The presence of the cap in defendant's trunk standing alone was suspicious. Evidence that someone other than defendant had sat in his vehicle's driver's seat also would not prove his innocence; there would be no way to show that someone else was driving defendant's vehicle at the time of the shooting. Accordingly, defendant can establish no error on counsel's part or prejudice as a result of the lack of such experts or testing.

Defendant contends that counsel should have challenged "structural flaws" in the arrest warrant, including the absence of a signature and official judge seal. It is true that the copy of the warrant in the lower court file is not signed and does not include an official seal. However, the register of actions indicates that the warrant was signed and the accompanying felony complaint in the record is signed. Accordingly, we discern no ground to find that the warrant was issued illegally. In any event, such procedural errors would not negate the trial court's jurisdiction over the case. "[A]n illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court." *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009). Ultimately, defense counsel was not ineffective for failing to raise a futile challenge to the warrant. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant asserts that counsel should have sought to dismiss the charges, or at least present alibi witnesses, at the preliminary examination phase of the proceedings. As noted, defendant has not established that his proposed alibi witnesses could have changed the outcome of his trial (at which guilt must be proven beyond a reasonable doubt). Accordingly, defendant cannot establish that his alibi witnesses would have overcome the preponderance-of-the-evidence standard at the preliminary examination stage. See *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009). Alibi evidence presented at the preliminary examination would simply have created a question of fact, one that would have to be resolved at trial. See *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010) ("If the evidence conflicts or raises a reasonable doubt concerning the defendant's guilt, the defendant should nevertheless be bound over for trial, at which the trier of fact can resolve the questions.").

Defendant complains that defense counsel never provided him with any discovery or witness lists produced by the prosecution. He concludes that the prosecutor must not have

provided such discovery and that counsel was ineffective for failing to file a motion to compel. Defendant also contends that counsel failed to contact him until the time of trial. None of these contentions are supported by the current record. Therefore, defendant has failed to establish the factual predicate for this claim as required by *Carbin*, 463 Mich at 600.

Defendant accuses defense counsel of failing to advise him regarding any plea offers made by the prosecution. This allegation is not borne out by the record. During the final conference before trial, the prosecutor indicated that he had attempted to negotiate a plea deal with defendant in exchange for the identity of Thomas's shooter. Defendant was then serving a sentence for an unrelated offense and, in exchange for information, the prosecutor would have conceded to defendant serving his sentences for the current offense concurrent with that for his prior. Defendant refused to supply the requested information. Defense counsel admitted on the record that no plea offer had been made absent defendant's cooperation, and took a moment off the record to ensure his client understood the consequences of his refusal to cooperate. The court then directly questioned defendant and defendant stated his understanding that the conference was his final chance to engage in plea negotiations. Given this record, defendant's claim completely lacks merit.

Defendant challenges defense counsel's failure to file dispositive motions after learning that the prosecutor had "no conclusive or definitive 'evidence' against defendant" and failure to seek a *Walker*[3] or *Ginther* hearing "regarding 'evidentiary issues.' " First, defense counsel had no reason to request a *Walker* hearing in this case; such hearings test the voluntariness of a defendant's confession. Defendant made no confession. Second, defendant does not appreciate that an attorney's performance is reviewed during a *Ginther* hearing. Therefore, it would be the role of appellate, not trial, counsel to request that type of hearing. Third, trial counsel did file a dispositive motion based on the lack of direct evidence linking defendant to the crime. At the close of the prosecution's case in chief, defense counsel sought a directed verdict, which was denied. In a separate argument, defendant reiterates his claim that counsel failed to seek a directed verdict and adds that counsel never argued that the prosecution failed to "prove beyond a reasonable doubt" that defendant was not "present during crimes" and did not "know about any such gun." Defense counsel's request for a directed verdict made this very argument. And counsel contended during closing argument that the prosecutor failed to meet his burden of proof that defendant was present during or involved in the crime. Accordingly, these claims are also meritless.

Despite accusing counsel of not raising any dispositive motions based on the lack of evidence, defendant then acknowledges that defense counsel did seek a directed verdict and complains that counsel should have filed an interlocutory application for leave to appeal to this Court based on the circuit court's denial of that motion. However, as will be discussed later in this opinion, the prosecution presented sufficient evidence to support defendant's convictions. Accordingly, any such application would have been without merit. Counsel was not ineffective for failing to advance a meritless argument. *Ericksen*, 288 Mich App at 201.

---

[3] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

Defendant asserts that counsel ineffectively advised him to take the stand and admit to the truth of Boyer's testimony. Defendant does not explain which aspect of Boyer's testimony defense counsel allegedly advised him to admit. Defendant may not simply announce a position and leave it to this Court to discover and rationalize the basis for his claim. *Kelly*, 231 Mich App at 640-641. Further, there is no support in the record for defendant's claim that defense counsel advised him to testify or to admit to any portion of Boyer's testimony. Outside the presence of the jury, the trial court advised defendant that he had a constitutional right to remain silent, and that if he chose not to take the stand, the court would instruct the jury that his silence could not be considered against him. The trial court elicited from defendant that he had the opportunity to discuss whether to testify with defense counsel, and that defendant understood that the decision belonged to him alone. Defendant then stated that he had decided to testify. Therefore, the record reflects that defendant was fully apprised of his rights, had the opportunity to consult with defense counsel, and voluntarily chose to testify.

Defendant next contends that defense counsel should have moved for dismissal or objected to the prosecutor's use of a second habitual offender notice where, according to defendant, neither he nor the court clerk was notified of the second habitual offender enhancement within 21 days of arraignment. This assertion is contradicted by the record. MCL 769.10 provides that a person who has previously been convicted of a felony is subject to an enhanced sentence if convicted of a subsequent felony. MCL 769.13(1) provides that the prosecutor may file a written notice of intent to seek an enhanced sentence within 21 days after the arraignment on the information or, if arraignment is waived, within 21 days after the filing of the information. Here, the habitual offender notice was filed as part of the felony information on August 30, 2013. It was also filed as part of the warrant and felony complaint on that date. At the November 8, 2013 arraignment, defense counsel waived the formal reading of the information and acknowledged that defendant had received a copy of the information, including the enhancement notice.

Defendant asserts that defense counsel should have objected to the prosecutor's use of Boyer's allegedly perjured testimony and suggests that the prosecutor threatened Boyer into testifying against him. Defendant further contends that defense counsel should have used Boyer's criminal history to impeach her testimony. However, there is no record indication that Boyer committed perjury, was intimidated into testifying, or had any prior convictions that could have been used for impeachment purposes. Accordingly, defendant cannot support his claim. See *Carbin*, 463 Mich at 600.

Defendant argues that counsel should have objected to the court's jury instructions. Specifically, defendant contends that the court should have provided a "missing alibi witness" instruction to the jury. Defendant does not describe the content of his proposed instruction or explain why he was entitled to this instruction. Defendant cites case law concerning the general requirement to instruct the jury on an alibi defense when such an instruction is requested. See, e.g., *People v Matthews*, 163 Mich App 244, 247-249; 413 NW2d 755 (1987). But the trial court *did* instruct the jury concerning defendant's alibi defense:

> You have heard evidence that the defendant could not have committed the alleged crimes because he was somewhere else when the crimes were committed. The prosecutor must prove beyond a reasonable doubt that the defendant was

actually there when the alleged crimes were committed. The defendant does not have to prove he was somewhere else. If after carefully considering all the evidence you have a reasonable doubt about whether the defendant was actually present when the alleged crimes were committed, you must find him not guilty.

Thus, to the extent defendant is suggesting that defense counsel was ineffective for failing to request instructions concerning defendant's alibi defense, the record refutes defendant's claim.

Defendant contends that counsel should have insisted on lesser-included-offense instructions, such as second-degree murder or manslaughter. Defendant does not explain how a rational view of the evidence would have supported these lesser-included-offense instructions. See *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002) ("[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it."). Moreover, defendant does not acknowledge that such instructions would have been inconsistent with his defense that he was not driving his vehicle at the time of the shooting because he was having a romantic rendezvous with Profit. The decision to forego lesser-included-offense instructions in lieu of an alibi defense was a matter of trial strategy. See *People v Armstrong*, 124 Mich App 766, 769; 335 NW2d 687 (1983). The fact that the trial strategy was ultimately unsuccessful does not mean that defense counsel was ineffective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Defendant contends that defense counsel should have argued against his conviction on aiding and abetting grounds where the principal offender was never identified, charged, or convicted. This position is inconsistent with Michigan law, under which an aider and abettor shares equal liability with any principal offender and may be tried and convicted completely separate from other offenders, and may be found guilty even where the principal is acquitted. See *People v Mann*, 395 Mich 472, 478; 236 NW2d 509 (1975) ("[A] person may be prosecuted for aiding and abetting without regard to the conviction or acquittal of the principal.").

Defendant argues that defense counsel should have sought a bill of particulars from the prosecutor. The purpose of a bill of particulars is to more fully inform the defense of the nature of the charges raised against the defendant. Where a defendant exercises his right to a preliminary examination, a bill of particulars is rendered unnecessary. At the examination, the prosecutor must present the facts underlying the charges and discuss the evidence supporting a probable cause determination. The examination therefore provides the defendant with more detailed information than provided in a bill of particulars. See *People v Harbour*, 76 Mich App 552, 557; 257 NW2d 165 (1977); *People v Jones*, 75 Mich App 261, 270; 254 NW2d 863 (1977). As defendant exercised his right to a preliminary examination in this case, a bill of particulars was not needed and counsel was not ineffective in failing to request one.

Defendant asserts that defense counsel failed to notify the court, defendant, the prosecutor, and the jury that defendant previously suffered from "severe psychological issues concerning cognitive abilities to recall nor [sic] to situationally be aware of dates and times of particular events and occurrences." The record is devoid of any evidence that defendant suffers from any "severe psychological issues[.]" In fact, he reported during the preparation of the

presentence investigation report that he was in "good . . . mental health." Therefore, defendant has not established the factual predicate for his argument. *Carbin*, 463 Mich at 600.

Defendant contends that he contacted defense counsel by phone or mail numerous times requesting that counsel file motions to suppress, to compel discovery, to quash the information, and to dismiss for violation of the 180-day rule. Defendant has presented no evidence of his contacts and such communications are not referenced in the record. Defendant does not describe what evidence should have been suppressed, what discovery should have been compelled, or why the information should have been quashed. He has therefore abandoned review of those claims. See *Kevorkian*, 248 Mich App at 389. Moreover, on the first day of trial, defense counsel indicated that defendant requested dismissal under the 180-day rule, and, as discussed later, the trial court properly denied the request.

Defendant contends that defense counsel was ineffective because he failed to challenge potentially biased jurors for cause. A criminal defendant has a constitutional right to be tried by a fair and impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008), citing US Const, Am VI; Const 1963, art 1, § 20. "[J]urors are presumed to be impartial until the contrary is shown." *Miller*, 482 Mich at 550 (quotation marks, citation, and ellipsis omitted). And the burden is on the defendant to rebut that presumption. *Id*. A defendant is not entitled to a new trial any time a juror had a preconceived opinion or feeling, rather the defendant must show prejudice as a result of the biased juror's presence. *Id*. at 547, 553 n 15. The removal of a juror for cause is warranted if the juror exhibits bias against the defendant, "shows a state of mind that will prevent the [juror] from rendering a just verdict," or has opinions that would improperly influence the verdict. MCR 2.511(D)(2), (3), (4). An attorney's decisions regarding the selection of jurors is generally a matter of trial strategy. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001).

> Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we cannot see the jurors or listen to their answers to voir dire questions. For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. [*People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (quotation marks and citations omitted).]

Defendant identifies four jurors whom he claims defense counsel should have challenged: CY, DD, JH, and MP. Defendant notes that each of these jurors was a crime victim, related to a crime victim, or had friends or family who were law enforcement personnel. We preliminarily note that defense counsel did employ a peremptory challenge to have DD removed from the jury. Accordingly, defendant can have no ground for complaint in that regard.

During voir dire, CY testified that when he was in high school, he was the victim of a robbery while working at a convenience store. The trial court asked CY if that experience would prejudice him such that he could not render a fair and impartial verdict, and CY responded, "No, sir." JH testified that his grandfather was murdered in Detroit when JH was a small boy. JH also indicated that "well over 10 years ago" he had "a couple uncles" who were "shooting victims." JH stated that nothing about these experiences would prevent him from being a fair and impartial

juror in this case. MP stated that he had "friends who are in law enforcement[.]" MP also "had three cousins that were victims of homicides." The most recent of these homicides occurred approximately 10 years earlier. When asked if he could separate those circumstances, put them aside, and focus on the facts and law of this case, MP responded, "Yes."

In sum, the subject jurors assured the court that they would render a fair and impartial verdict. They took an oath to try the case justly and to reach a true verdict. The jurors' assurances and oath were sufficient to protect defendant's right to a fair trial. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions."). Because defendant has not met his burden of proving that the jurors were partial, defendant has also failed to establish that defense counsel's performance was constitutionally deficient for failing to challenge the jurors for cause. There is no basis for this Court to substitute its judgment for that of defense counsel with respect to the decision whether to challenge the jurors. "A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury." *Unger*, 278 Mich App at 258 (quotation marks and citation omitted). Nor has defendant shown a reasonable probability of a different result if these jurors had been removed. The record does not reflect that the jurors were unfair or that defendant's conviction resulted from juror bias.

Defendant accuses defense counsel of acquiescing to a violation of discovery rules, the trial court's discovery order, and due process when the prosecutor failed to file a proof of service with the court clerk to admit certain evidence at trial. This issue arose at trial:

> *THE COURT*: All right, at sidebar, defense counsel brought to the attention of the Court that the defendant, Mr. Dickens, was questioning whether or not at that time Proposed Exhibits 6, 7, 8, 9, 10 and 11 should be even allowed to be called or used by the prosecution because a supposed Proof of Service was not provided to defendant or the defense counsel concerning those proposed exhibits.
>
> Mr. Dickens, there is no requirement for a Proof of Service in regard to the presentation of any proposed exhibits.
>
> *DEFENDANT DICKENS*: I'm just referring to what your – I'm just referring to what your discovery order says.
>
> * * *
>
> *THE COURT*: That's in regard to exchange of information before trial, okay. That has absolutely nothing to do with the admissibility of evidence.
>
> *DEFENDANT DICKENS*: It clearly says any special objects or evidence, reports by experts –
>
> *THE COURT*: Mr. Dickens, I've just expressed myself on the record. Have a seat.

Contrary to defendant's assertion, the above exchange reflects that defense counsel raised the issue with the trial court during a sidebar conference, and the trial court rejected defendant's position. In any event, admission without filing a proof of service was not inconsistent with the court's pretrial order. The November 8, 2013 discovery order stated, in relevant part: "Any special object of evidence (i.e., reports by experts, videos, recordings, etc.) provided to opposing counsel must have filed in the court a proof of service, per MCR 2.104, or they will not be admitted at the time of trial." The challenged exhibits were photographs of his vehicle's VIN number and license plate, and of the bullet holes sustained by his vehicle on April 10. Defendant fails to address whether or how these exhibits fall within the parameters of the order's provision.

Accordingly, defendant has not established that his trial counsel was constitutionally deficient and therefore cannot support his request for a new trial.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to support his convictions. In the face of such a challenge, "we review the evidence de novo, in the light most favorable to the prosecution," to determine "whether any rational fact-finder could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). We will not interfere with the trier of fact's role of determining the weight of the evidence or assessing the credibility of witnesses. *Id.* at 419. "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

Defendant does not challenge the evidence supporting the elements specific to the convicted offenses. Instead, defendant contends that the prosecution failed to prove that he was involved in the crime because there is no video or photographic proof, or eyewitness testimony, that he drove the vehicle that dropped off and picked up the shooter at the crime scene. Defendant also notes that the forensic cell phone analysis expert testimony could only place his cell phone within one-half mile to one mile of the crime scene, thereby failing to prove his presence.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Here, the prosecution presented ample circumstantial evidence to prove defendant's identity as the driver who aided and abetted the shooting of DaJuan Thomas. Surveillance video footage showing the shooter being dropped off and picked up at the homicide scene by a 1999 Ford Crown Victoria. This vehicle had several unique characteristics, including missing front hubcaps, custom chrome pieces on the door posts, and markings of a Mercury Grand Marquis in the back of the vehicle. All of these unique characteristics matched the vehicle registered to defendant and impounded by police the day after the shooting. Video surveillance footage obtained from a nearby dentist's office showed that shortly before the homicide, defendant's vehicle followed the victim's. When shown the surveillance footage of the incident outside the liquor store, Boyer identified defendant's vehicle. A black Chicago Bulls baseball cap with a red bill found in the trunk of defendant's vehicle looked similar to a cap the shooter was wearing in the video.

-11-

In addition, an expert in forensic cellular telephone technology determined that defendant's cell phone was in the same cell tower area as the victim's cell phone and as the homicide scene at the time of the homicide. The placement of defendant's car and cell phone together in the neighborhood of the shooting strengthens the case that defendant personally was at the scene.

Defendant also made incriminating statements to Boyer indicating that he had been involved in an attempted robbery on April 9 and that the shots fired at his vehicle on April 10 were in retribution. While in jail on unrelated charges, defendant directed Boyer not to communicate with police regarding this matter and to dispose of a coat that "Pistol" would bring to her. Defendant also told Boyer to say that she was with him and that his car was in the shop at the time of the homicide. Viewed in the light most favorable to the prosecutor, this evidence was sufficient to establish that defendant was the driver involved in the attempted robbery and shooting in question.

Defendant also suggests that the verdict was against the great weight of the evidence because the evidence was inadequate to establish his identity as the getaway driver. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). As noted, the prosecution presented more than adequate circumstantial evidence placing defendant in the driver's seat of the vehicle that transported the shooter to and from the scene. Accordingly, we discern no ground for granting defendant relief in this regard.

IV. 180-DAY RULE

Defendant contends that the court violated the 180-day rule by failing to dismiss the case when trial was not timely started. We review de novo legal questions arising under the 180-day rule. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003).

MCL 780.131(1) provides:
> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

See also MCR 6.004(D)(1). The language of MCL 780.131(1) provides that the Michigan Department of Corrections (MDOC) must send written notice by certified mail to the prosecutor in order for the 180-day rule to be triggered. *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013). The 180-day period must be triggered before any violation can be found. *Id*.

In the present case, there is no evidence that the MDOC sent the statutorily required written notice by certified mail to the prosecutor. Accordingly, we must conclude that the 180-day period was not triggered and no violation can be found.

We note that defendant uses the term "speedy trial" in his appellate brief, but never actually claims a violation of his right to a speedy trial. In any event, defendant has not established a violation of his right to a speedy trial. "Aside from the 180-day rule, a defendant's right to a speedy trial is guaranteed by the United States and Michigan Constitutions." *Rivera*, 301 Mich App at 193, citing US Const, Am VI; Const 1963, art 1, § 20; see also MCL 768.1 (codifying the right to a speedy trial). "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest. In contrast to the 180-day rule, a defendant's right to a speedy trial is not violated after a fixed number of days." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006) (citation omitted).

> Whether an accused's right to a speedy trial is violated depends on consideration of four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred. When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice. [*Rivera*, 301 Mich App at 193 (quotation marks and citations omitted).]

In this case, an arrest warrant issued on August 30, 2013, and defendant was arraigned on the warrant on August 31, 2013. Trial began on March 17, 2014. Because less than seven months elapsed between defendant's arrest and his trial, prejudice cannot be presumed. *Id*. at 194. Defendant has claimed no prejudice, let alone proven prejudice, as a result of any trial delay. Accordingly, he is entitled to no relief.

We affirm.


/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens