# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICKY TRAVIS BRIDGEMAN,

Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 327102
Ingham Circuit Court
LC No. 14-000858-FC

Before: STEPHENS, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. The trial court sentenced defendant as a third habitual offender, MCL 769.11, to concurrent prison terms of 40 to 60 years for armed robbery, 20 to 40 years for first-degree home invasion, and 57 months to 10 years for felon in possession of a firearm, and to a two-year sentence to be served consecutive to the other sentences for felony firearm. Defendant appeals as of right. We affirm defendant's convictions but remand for resentencing.

## I. FACTS

After midnight on July 11, 2014, four men broke into the home of Meranda White, who worked for a medical marijuana distributor delivering medical marijuana. White was asleep in her first-floor bedroom with her four-year-old son. Her daughter was asleep upstairs, while her 16-year-old son and his friend were in the living room. The men burst into the home through an unlocked door and ordered the boys in the living room to the ground. One of the men, whom White later identified as defendant, entered her room, pointed a gun at her, and asked where "the shit" was located. White did not understand what he meant but directed him to her purse, which he took. He then stood her up and continued to demand the unknown item, stating that he knew she worked at the marijuana dispensary. White fought with defendant until a second larger and stronger man "[g]rabbed me by my hair and drug me into the kitchen and then proceeded to punch me in my face"; she said he punched her head four times and held her head to the ground where she could see a third man pointing a gun at the boys in the living room. White said that defendant then told the group that they should leave because White did not have anything, and

-1-

that the group left the home through the front door with White's bag containing $400 and any phones that had been in the home.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the trial court erred in denying a mistrial after the prosecutor referred to defendant's trial counsel as deceitful. A trial court's decision to grant or deny a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269-270; 666 NW2d 231 (2003). A claim of prosecutorial misconduct is a constitutional issue reviewed de novo. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003).

The prosecutor stated the following during an objection to a question by defense counsel proposing that only one perpetrator had entered White's bedroom:

> [Defendant's trial counsel] has got to stop mischaracterizing the testimony and trying to trip [White] up. She testified repeatedly two males were in the bedroom that night. This is the sixth example of stating a question improperly. There's leading and there's deceiving, and this is the later.

The responsibility of a prosecutor is to seek justice, rather than merely to convict. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Id*. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused. *Id*. at 63-64. Claims of prosecutorial misconduct are reviewed on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial resulting in prejudice to the defendant. *People v Fyda*, 288 Mich App 446, 460-461; 793 NW2d 712 (2010).[1]

The prosecutor may not question the veracity of defendant's trial counsel, or suggest that defense counsel is intentionally attempting to mislead the jury. *People v Wise*, 134 Mich App 82, 101-102; 351 NW2d 255 (1984); *People v Dalessandro*, 165 Mich App 569, 579-580; 419 NW2d 609 (1988). This prohibition is based on the negative impact such an argument has on the presumption of innocence:

---

[1] In *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), the Court explained that the term "prosecutor misconduct" was more appropriately applied to the rare cases where the prosecutor's behavior violated the law or the rules of professional conduct, and that the term "prosecutorial error" was more appropriately applied to common claims of conduct that may have been a technical or inadvertent error at trial. However, regardless of the term used, claims are evaluated to determine whether errors during the course of trial deprived the defendant of a fair and impartial trial. *Id*. at 88.

When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. . . . Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*Wise*, 134 Mich App at 102.]

Improper comments by the prosecutor unfairly introduce issues that encourage jurors not to make reasoned judgments. *Abraham*, 256 Mich App at 273.

Here, the prosecutor harshly characterized the questions of defendant's trial counsel as engaging in deceit. While the prosecutor was correct that defense counsel's line of questioning mischaracterized the complainant's testimony, attributing intentional misleading to defense counsel was misconduct. However not all misconduct merits a mistrial.

A trial court should grant a mistrial with caution, and only for an irregularity that is prejudicial to the rights of the defendant. *Schaw,* 288 Mich App at 236; *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). A trial court should grant a mistrial only when the error is "so egregious that the prejudicial effect can be removed in no other way." *People v Gonzalez*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Here, the prosecutor's objection, characterizing six of defendant's questions as deceiving, was not "so egregious that the prejudicial effect" could not be removed by anything short of a mistrial. The effect of any prejudice was diluted by the colloquy that took place in front of the jury after the prosecution's objection. Thereafter, defense counsel argued an inconsistency in White's testimony and the court attempted to clear up any confusion with an unsuccessful paraphrase. White corrected the court and clarified that only one man was in her bedroom at first and then a second came after her son started screaming. Because the court too was unclear about how White testified, defense counsel's questioning before the jury appeared less like intentional misleading and more like a genuine confusion about what the witness said. Still, the prosecution's objection specifically addressed one question during the cross-examination of one witness during a three-day trial, and did not constitute misconduct. Further, instructions from the trial court to the jury may be sufficient to eliminate any prejudice that might result from a prosecutor's remark. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). In the current case, the trial court instructed the jury that "[l]awyer's statements and arguments and any commentary are not evidence." The court explained that the lawyers' statements "are only meant to help you understand the evidence and each side's legal theories." The court further instructed the jury to "only accept the things the lawyers say that are supported by the evidence and by your own common sense and general knowledge." Jurors are presumed to follow these instructions and this instruction presumably alleviated any prejudice that may have occurred as a result of the prosecutor's objection. *People v Torres*, 222 Mich App 411, 423; 564 NW2d 149 (1997). Thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

## III. OFFENSE VARIABLES

Next, defendant argues that offense variables (OVs) 3, 8, and 10 were incorrectly scored. We agree in part and disagree in part. The traditional standards of review, including review of judicially ascertained facts, continue to apply to the scoring of the advisory guidelines following

*People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *People v Steanhouse*, 313 Mich App 1, 18; ___ NW2d ___ (2015), slip op at 19. The Court reviews the trial court's factual determinations for clear error, and the findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The interpretation and application of the legislative sentencing guidelines involve legal questions that this Court reviews de novo. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7. The trial court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *Lockridge*, 498 Mich at 392 n 28. The trial court's determinations must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

Defendant argues that the trial court improperly scored OV 3 at 10 points where it should have been scored at five points. OV 3 considers physical injury to a victim and is scored 10 points when the victim of the crime incurred a bodily injury requiring medical treatment, regardless of whether the victim was successful in obtaining treatment. MCL 777.33(1)(d); MCL 777.33(3). OV 3 is scored at five points for bodily injury not requiring treatment. MCL 777.33(1)(e). In *People v Cathey*, 261 Mich App 506, 514; 681 NW2d 661 (2004), the Court defined bodily injury as "physical damage to a person's body."

Here, an officer testified that White had a swollen right eye and blood from a cut around her mouth. White testified that she was punched four times, that her cornea was scratched and that her lip was cut open. White explained that her eye injury impaired her vision. Defendant argues that White self-reported that her cornea was scratched, and that a police report referenced in the presentence investigation report stated that she did not receive medical treatment. However, White testified that she went to the hospital for her injuries after she spoke with police. Thus, the evidence supported a finding that White was injured and required medical treatment, and OV 3 was properly scored at 10 points.

Defendant argues that OV 8 was improperly scored at 15 points when it should have been scored zero points. OV 8 considers victim asportation or captivity and was scored 15 points because "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Defendant argues that OV 8 should not have been scored because he was not a participant in White's asportation. We agree. There was no evidence that defendant directly moved White. Here, White testified that she physically struggled with defendant after he entered her bedroom with a gun, but that a larger man entered the room, grabbed her by the hair and transported her to the kitchen by dragging her. White stated that the larger man was punching her and telling her to shut up and was holding her head to the kitchen floor. "[A] defendant shall not have points assessed solely on the basis of his or her co-offenders' conduct unless the OV at issue specifically indicates to the contrary." *People v Gloster*, ___ Mich ___, ___; ___ NW2d ___ (2016) (Docket No 151048); slip op at 7. In contrast to OVs 1, 2 and 3, OV 8 does not specifically reference or require the court to assess a defendant points based on the conduct of a

co-defendant. MCL 777.38. Thus, it was improper for the trial court to score OV 8 at 15 points. *Gloster*, ___ Mich at ___; slip op at 10.[2]

"[A] defendant is entitled to resentencing if his or her sentence is based on an inaccurate guidelines score that affects the applicable sentencing guidelines range." *People v Rhodes*, 305 Mich App 85, 91; 849 NW2d 417 (2014). OV 8 was scored under both defendant's home invasion conviction and armed robbery conviction. As for the home invasion conviction, defendant's present guidelines range, with 85 total OVs, is 117-240 months in cell F-IV. Minus the 15 points scored for OV 8, defendant would be in cell F-V with a guidelines range of 99 to 240 months. In relation to defendant's armed robbery conviction, defendant's present guidelines range, again with 85 total OV points, is 225 to 562 months or life and places him in cell F-V. Again, absent the scoring of 15 points for OV 8, defendant's cell grid drops to F-IV with a sentence guidelines range of 171 to 427 months. Defendant's current sentences for home invasion and armed robbery are respectively, 240 to 480 and 480 to 720. Because the minimum sentences are outside the guidelines range, defendant is entitled to resentencing. *Id*.

Defendant also argues that the trial court erred in scoring OV 10, exploitation of a victim's vulnerability, at 15 points. MCL 777.40(1). OV 10 is scored at 15 points where predatory conduct, which is "preoffense conduct directed at a victim . . . for the primary purpose of victimization," was involved. MCL 777.40(1)(a); MCL 777.40(3)(a).

In *People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008), the Court stated that OV 10 is scored at 15 points when the responses to the following inquiries are true:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?

However, predatory conduct involves only conduct that is "commonly understood as being 'predatory' in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct or 'preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011) quoting *Cannon*, 481 Mich at 162.

---

[2] Defendant additionally argues whether White was moved to a place or situation of greater danger. Given our disposition that defendant should not have been scored under OV 8 for the conduct of another defendant in the first place, we find it unnecessary to address defendant's additional argument.

Here, defendant argues that there was no evidence that he engaged in preoffense conduct directed at a victim. He states that there was, at most, an implication that defendant was a part of run-of-the-mill planning. Further, he argues that only his actual participation in preoffense conduct can be scored. However, there was a preponderance of evidence to demonstrate that defendant actually participated in preoffense conduct that targeted White at her home. White testified that she observed defendant among several young men on a porch when she made a home delivery of medical cannabis for her employer within one month before the robbery. White reported that, during the robbery, defendant repeatedly stated that he was looking for cannabis, and argued with her regarding whether she had cannabis because he knew specifically where she worked. Thus, because White saw defendant previously during the course of her employment, and defendant's words and conduct indicated that he knew who White was, who her employer was and what her job entailed, and where she lived, and because he coordinated with three other perpetrators, there was evidence to support that defendant engaged in preoffense conduct for the purpose of stealing cannabis and other items from White's home. White was not a random victim who was merely the subject of "opportunistic criminal conduct."

## IV. LOCKRIDGE

Defendant next argues that his sentence was improper on constitutional grounds. In *Apprendi v New Jersey,* 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne v United States*, 570 US ___, ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013), the Court found that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Id*.

Defendant argues that OVs 3, 8, and 10 were all scored based on judicial fact-finding in violation of *Alleyne*, *Lockridge* and the Sixth Amendment. However, the offense variables may continue to be scored based on facts found by the trial judge, and not found by the jury or admitted by defendant, because *Lockridge* explicitly allowed for judicial fact-finding. *Lockridge,* 498 Mich at 391, 392 n 28 ("Our holding today does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not."). Additionally, the Court in *Alleyne* noted that its decision did "not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial fact-finding, does not violate the Sixth Amendment." *Alleyne*, 133 S Ct at 2163, citing *Apprendi,* 530 US at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment *within* the range prescribed by statute."). However, the Court in *Lockridge*, 498 Mich at 383, concluded that Michigan's sentencing scheme violated the *Apprendi* and *Alleyne* rule because the sentences produced by the sentencing guidelines relied on "judge-found facts [that] are used to curtail judicial sentencing discretion by *compelling* an increase in the defendant's punishment." Thus, Michigan's sentencing scheme was in violation of the Sixth Amendment because "facts not admitted by the defendant or necessarily found by the jury verdict" increased a defendant's "mandatory minimum" sentence. *Id*. at 373-374. The Court held that, as a result, the sentencing guidelines would be advisory only, rather than mandatory, but that they would be "a highly

relevant consideration in a trial court's exercise of sentencing discretion." *Id*. at 391.[3] A sentencing court "must consult those Guidelines and take them into account when sentencing." *Id*., citing *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

Here, the scoring of OVs 3, 8, and 10 was based on judicial fact-finding. Defendant did not admit, and to convict him of the crimes charged it was not necessary for the jury to determine, to what extent White was injured, whether White was asported to another place of greater danger, or whether defendant engaged in predatory conduct and exploited a vulnerable victim. In cases such as these, where a defendant was sentenced before the July 29, 2015 date of the *Lockridge* decision, and the constitutional challenge to his sentence was not preserved, a defendant's Sixth Amendment right is impaired if the "facts admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Lockridge*, 498 Mich at 395. Because defendant's OV 3, 8, and 10 scores accounted for 40 OV points, the facts found by the jury's verdict were insufficient to assess the minimum number of OV points necessary for defendant's OV score to fall in the F–V cell of the sentencing grid under which he was sentenced. See MCL 777.62. "[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. "[I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 397.

Here, defendant has made a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry according to the procedure set forth in *United States v Crosby,* 397 F3d 103 (CA 2, 2005). In *Lockridge*, the Court provided the following remedy based on *Crosby*:

> [A defendant] is entitled to a remand for [sic] the trial court for that court to determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion. If the trial court determines that it would not have imposed the same sentence but for the constraint, it must resentence the defendant. [*Lockridge*, 498 Mich at 399.]

The Court provided further preliminary instructions for the sentencing court, as follows:

---

[3] The Court severed MCL 769.34(2) by substituting the word "may" for "shall" in MCL 769.34(2) where it had previously required that a minimum sentence for a felony "shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed." *Lockridge*, 498 Mich at 391.

[A] trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. [*Id*. at 398.]

The Court specified that, "in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the 'circumstances existing at the time of the original sentence.' " *Lockridge*, 498 Mich at 398, quoting *Crosby*, 397 F3d at 117.

## V. DOUBLE JEOPARDY

Lastly, defendant argues that he was sentenced in violation of constitutional double jeopardy protections because he was twice punished for the same offense when he was sentenced for both felony-firearm and felon in possession of a firearm. Unpreserved claims of constitutional error may only be reviewed for plain error affecting substantial rights. *People v Odom*, 276 Mich App 407, 413; 740 NW2d 557 (2007). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. quoting *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

The Fifth Amendment of the United States Constitution and the Michigan Constitution protects a criminal defendant from being "subject for the same offence to be twice put in jeopardy . . . ." US Const Amend V; Const 1963, art 1, § 15. Michigan's double jeopardy provision was intended to be "construed consistently with Michigan precedent and the Fifth Amendment." *People v Szalma*, 487 Mich 708, 715-716; 790 NW2d 662 (2010). The prohibition against double jeopardy provides three related protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004).

Normally, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). However, "where, as here, the Legislature specifically authorizes cumulative punishment, the *Blockburger* test has no application." *People v Dillard*, 246 Mich App 163, 166 n 2; 631 NW2d 755 (2001), citing *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998).

In *Dillard*, the Court determined that the clear intent of the Legislature was that, with only four narrow exceptions, "every felony committed by a person possessing a firearm result in a felony-firearm conviction." *Id*. at 167, citing *Mitchell*, 456 Mich at 697, quoting *People v Morton*, 423 Mich 650, 656; 377 NW2d 798 (1985). The Court noted that the Supreme Court concluded in *Mitchell* that the four exceptions explicitly stated in MCL 750.227b(1) were

exclusive and "that the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute."[4] *Dillard*, 246 Mich App at 165, quoting *Mitchell*, 456 Mich at 698. The Court concluded that a felon in possession of a firearm charge does not constitute one of the specific exceptions to the felony-firearm statute; thus, "the Legislature clearly intended to permit a defendant charged with felon in possession to be properly charged with an additional felony-firearm count." *Dillard*, 246 Mich App at 167-168.

In *People v Calloway*, 469 Mich 448, 451-452; 671 NW2d 733 (2003), the Court found that sentences for both felony-firearm and felon in possession of a firearm did not violate the double jeopardy clause because the reasoning in *Mitchell*, which was followed in *Dillard*, resolved the matter. In *Dillard*, the Court also found that the "two statutes have distinct purposes that address different social norms;" thus, "they should be viewed as separate and amenable to permitting multiple punishments." *Dillard*, 246 Mich App at 171.

Defendant argues that the felon in possession of a firearm statute was enacted after the 1992 amendment of the felony-firearm statute and, thus, the Legislature may have intended to include felon in possession as one of the exceptions to the felony-firearm statute. However, the Court in *Dillard* specifically rejected this argument and concluded that the Legislature could "have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under the felony-firearm statute that was premised on MCL 750.224f." *Id*. at 168.

We affirm defendant's convictions, but remand for resentencing based on the correction of scoring OV 8 and for proceedings consistent with *Lockridge*. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher

---

[4] The four exceptions are MCL 750.223 (prohibiting unlawful sale of firearms), MCL 750.227 (prohibiting carrying of a concealed weapon), MCL 750.227a (prohibiting unlawful possession of a firearm by a licensee), and MCL 750.230 (prohibiting alteration of identifying marks on a firearm). *Dillard*, 246 Mich App at 168 n 3.