*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
June 29, 2023

v

APRIL GRACE HOLTZLANDER,

Defendant-Appellant.

No. 359148
Roscommon Circuit Court
LC No. 21-008639-FH

Before: GADOLA, P.J., and PATEL and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of possession of less than 25 grams of fentanyl, MCL 333.7403(2)(a)(*v*), MCL 333.7212(b).[1] We affirm.

## I. BACKGROUND

William Sutton owned a three-row van that he used for a taxi service. On December 16, 2020, defendant patronized Sutton's taxi service and was seated in the front-row passenger seat when Sutton was pulled over by police for having his headlights off. During the course of the stop, the officer discovered that Sutton had both methamphetamine and Adderall on his person, that there was additional methamphetamine between the second and third rows of the van, and that there was fentanyl inside of a lottery ticket on the front-passenger-seat floorboard. Defendant was found guilty of possession of fentanyl, and this appeal followed.

## II. LIMITING INSTRUCTION

Defendant raises claims of both ineffective assistance of counsel and plain error arising from the trial court's failure to give limiting instructions pertaining to comments that the prosecuting attorney made while questioning William Sutton. The ineffective assistance argument

---

[1] Defendant was also charged with possession of Methamphetamine, MCL 333.7403(2)(b)(*i*), but was found not guilty of this charge.

is based on the premise that defense counsel should have requested that a specific curative instruction be given at the time the comments were made. The plain error argument is based on the premise that the trial court should have sua sponte offered such an instruction. We conclude that neither argument has merit.

Defendant's argument emanates from multiple exchanges that the prosecuting attorney had with Sutton about statements Sutton purportedly made prior to trial. Sutton explained that he was driving down the road with defendant in the passenger seat when he saw that the police were pulling him over, and defendant asked Sutton, "What—what do you want me to do?" When asked by the prosecutor, Sutton denied that defendant had said anything about having drugs, and he testified that she seemed concerned about the possibility that her sitting in the front seat was violating COVID-19 restrictions. The prosecutor did not believe Sutton was being truthful and pressed him on the subject:

*Q*. And, Mr. Sutton, again today, you know, my goal is to be—have the honest, truthful testimony. Do you understand that?

*A*. Yeah.

*Q*. You were—had a discussion with my assistant prosecutor, did you not?

*A*. I did.

*Q*. And during that discussion, what did you tell him regarding what [defendant] said to you when you were getting pulled over?

*A*. Well, what—I said she said that "What—what am I supposed to do?" And I think that it was assumed or speculated that she was supposed to hide or do something like that but.

*Q*. Didn't you tell my chief assistant prosecutor that she told you not to stop right away because she had to get rid of the drugs?

*A*. Not—

*Q*. And that you told her to crotch them and hopefully there wouldn't be a male police officer? Is that not what you told my chief assistant?

*A*. No, I don't think I told your chief assistant that. I think I—I—'cause I would've never—I would've known that she had drugs on her at that point if she would've said that, and I didn't know until the—the dog ran around the bus and hit there.

*Q*. So why would you tell my off—my chief assistant that?

*A*. I told him that she said, "What do I do?" Like, I mean, maybe he assumed that "what do I do" means oh that—that—that we had—she told me to go further, go somewhere else? Is that what you're asking me?

*Q.* Mr. Sutton, I'm asking didn't you tell my chief assistant prosecutor that, when you saw the police behind you, she said, "Drive a little bit further I got to get rid of these drugs." And you said, "Crout—put them in your crotch because hopefully it won't be a male officer?"

At that point, defendant's attorney objected and argued that the prosecutor had asked a leading question. The court allowed the prosecutor to proceed, and he continued to press Sutton about what defendant had said to him.

Later during Sutton's testimony, the following exchange took place:

*Q.* [Defendant has] not asked you to take ownership of the drugs?

*A.* I haven't been able to talk to her since this all happened. I was ordered not to talk to her in any way, shape, or form. So, no.

*Q.* Did you tell my chief assistant prosecutor that she did that? That she told you to just take responsibility for the drugs?

*A.* No. Wait. Did—does he write that all—he wrote down that I—I said that she told me to possession [sic] of her—or responsibility for all the drugs? He wrote that down that I said that?

*Q.* That is what I was told you told him.

At this point, defense counsel raised a hearsay objection, but the court concluded that the "statement isn't offered for the truth of the matter asserted. So that statement from [the chief assistant prosecutor] is not hearsay." During the conversation about the objection, the prosecutor made the following comment—in the jury's presence—about the assistant prosecuting attorney: "Your honor, that's who he had the conversation with. I mean, I suppose we could call [the chief assistant] as a witness. But that's who he had the conversation with and that's who he told that to."

The defendant's attorney did not ask the trial court for an instruction at that moment specifically telling the jury not to consider the prosecutor's statements about what Sutton told the assistant prosecutor and the trial court never gave the jury such an instruction.

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel rendered ineffective assistance by failing to request a curative instruction in response to the prosecutor's statements. We disagree.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Israw*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 351665 and 354834); slip op at 5 (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

Defendant argues that her trial counsel should have requested a curative instruction in response to the prosecutor's comments while questioning Sutton. In particular, as is outlined above, the prosecutor repeated statements Sutton had purportedly made to an assistant prosecuting attorney. Moreover, while arguing against defense counsel's hearsay objection, the prosecutor matter-of-factly stated "that's who he had the conversation with and that's who he told that to." Defendant argues that this was an impermissible assertion of special knowledge that the witness was not testifying truthfully,[2] and defense counsel should therefore have requested a curative instruction. We reject this claim of error because the jury was thoroughly instructed on all of the relevant issues at the end of the trial, and "jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

At the trial's conclusion, the court instructed the jury as follows, in relevant part:

> When you discuss the case and decide on your verdict, *you may only consider the evidence* that has been properly admitted in this case. Therefore, it is important for you to understand what evidence is and what is not evidence.

> Evidence includes only the sworn testimony of the witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. And there wasn't anything else I told you to consider; so it's just the testimony and the exhibits.

> Many things are not evidence, and you must be careful not to consider them as such. I will now describe some things that are not evidence.

> \* \* \*

> *The lawyers' statements and arguments are not evidence.* They are only meant—meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge. *The lawyer's question— questions . . . are also not evidence.* You should consider these questions only as they give meaning to the witnesses' answers. . . .

---

[2] See *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014) ("[A] prosecutor may not suggest that he or she has some special knowledge that [a] witness is testifying untruthfully.")

-4-

. . . [I]t is your job to decide what the facts of this case are. *You must decide which witnesses you believe* and how important you think their testimony is. . . .

These instructions dispel any argument in favor of either prong of the *Strickland* test. Trial counsel did not err by declining to request a curative instruction because the jury was in fact instructed on all of the law relevant to defendant's claims of error. Defendant argues that a specific curative instruction should have been crafted immediately following the prosecutor's comments. However, it is a valid trial strategy for attorneys to favor moving past an inappropriate question or remark rather than drawing more attention to it. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("Certainly there are times when it is better not to object and draw attention to an improper comment."). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). Defendant's argument pertains to a brief exchange and one comment during the direct examination of the first of five witnesses. A prompt and customized curative instruction would have required the court to ruminate on the issue even though defendant's interests were likely best served by promptly moving past it. Indeed, following the prosecutor's statement that "that's who he had the conversation with and that's who he told that to," the prosecutor did move on and there was no further discussion of the alleged prior statements. Therefore, we defer to defense counsel's judgment on this issue, and defendant's ineffective assistance of counsel claim is without merit.[3]

Defendant's reliance on *People v Jenkins*, 450 Mich 249; 537 NW2d 828 (1995) is misplaced. The defendant in *Jenkins* was convicted of assault with intent to commit murder (AWIM) following a drive by shooting in which the victim "was killed by automatic gunfire from a passing automobile" that was described by the victim's companion as being gold or brown. *Id.* at 251-252. "Reginald Pennington gave police a signed statement that immediately before the incident he had seen Jenkins riding in a gold Sunbird toward the crime scene, and that gunfire erupted immediately after the vehicle left Pennington's line of sight." *Id.* at 252. However, when Pennington testified at the trial he "offered little useful information" and instead said "that he was sitting on his porch a block away from the crime scene when he heard shots and saw a crowd gather" and that he did not remember seeing a gold car that day. *Id.* Pennington acknowledged having signed the statement but testified that it did not refresh his memory and that he did not tell the officer who prepared the statement that he had seen the defendant in the gold car. *Id.* The prosecution then called the officer as a witness, and he read the statement into the record verbatim. *Id.* at 253-254.

Our Supreme Court held that "the court abused its discretion in permitting [the officer] to read from the memorandum of Pennington's statement under circumstances creating an

---

[3] Defendant also cannot establish that there was a reasonable probability of a different outcome had a curative instruction been given immediately after the remark was made because, as noted above, there is a presumption that jurors obey their instructions, and defendant has offered us no basis upon which to conclude that the jurors in this case did not follow their instructions. See *Unger*, 278 Mich App at 235.

unacceptable risk that the jury would accept the contents of the memorandum as substantive evidence." *Id*. at 260. The prior inconsistent statement was admissible "only to show that Pennington made the inconsistent statement, and not as substantive evidence that Jenkins was in the Sunbird, driving to the scene of the killing shortly before the shots were heard." *Id*. at 261. The Supreme Court reasoned that "special care should have been taken to ensure that" the evidence was not used as substantive proof and that the officer, rather than reading the statement, could have simply testified "from memory whether Pennington reported seeing defendant in the car at that time, and whether he thought Pennington was intoxicated when he made the statement." *Id*. at 262. The Court noted that the prosecutor also referenced the prior statement as substantive proof during closing arguments. *Id*. Finally, the court bolstered its conclusion that the jury likely considered the evidence for an impermissible purpose with a concise discussion of the jury instructions:

> Our concern that the jury accepted the prior statement as substantive evidence is heightened by the lack of a limiting instruction to the jury when [the officer] read the statement. The court should have told the jury at the time of [the officer's] testimony that it was only to consider it for impeachment purposes. But the judge did not do so until after the conclusion of the proofs, when he instructed generally. That belated instruction did not refer to Pennington or [the officer] by name. This omission of a timely limiting instruction reinforces our conclusion that error occurred. [*Id*. at 263 (footnotes omitted).]

There are significant differences between the present case and *Jenkins* that render *Jenkins* inapplicable to the facts currently before us. First, *Jenkins* did not involve a claim of ineffective assistance of counsel. In this case, our analysis is focused solely on defense counsel's decision not to request a curative instruction. Even assuming arguendo that the prosecution's statements were inappropriate and a curative instruction would have been warranted if requested, we cannot disturb a defense attorney's decision that the client's interests are best served by declining to object if that decision was based on reasonable professional judgment. See *Traver*, 328 Mich at 422-423. For the reasons discussed above, defense counsel's decision to move past the issue was reasonable and likely in defendant's best interests. The second consideration that distinguishes *Jenkins* is that it involved a more extreme set of facts. *Jenkins* involved the admission of a word-for-word reading of the prior statement by the person to whom the statement was made. *Jenkins*, 450 Mich at 253-254. In this case, the prosecutor talked about statements that Sutton had purportedly made to a third person. In *Jenkins*, the witness admitted to having both read and signed the prior written statement. *Id*. at 252. In the present case, defendant vigorously denied having ever made the prior oral statement, and no one with personal knowledge of defendant's conversation with the chief assistant prosecutor offered testimony to the contrary. To reiterate: *Jenkins* did not involve a claim of ineffective assistance of counsel; however, we can ascertain no valid strategic reason that would have existed for a failure to request a detailed limiting instruction under that facts of that case.

Finally, we note that in *Jenkins* the primary focus of the analysis was not on the necessity of a curative instruction; rather, the primary focus was the admissibility and acceptable usage of the prior written statement. The discussion of curative instructions was a secondary aside used to bolster the Court's conclusion that the evidence was offered for an impermissible purpose. Subsequent caselaw discussing *Jenkins* supports our view. Our Supreme Court clarified that "*Jenkins* stands for the general proposition that prior unsworn statements of a witness are mere

hearsay and are generally inadmissible as substantive evidence." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). This Court later concluded that *Jenkins* also stands for the proposition "that when a statement is not being offered for the truth of the matter asserted and would otherwise be inadmissible if a witness testified to the same at trial, there is a danger that the jury might have difficulty limiting its consideration of the material to its proper purpose." *People v Musser*, 494 Mich 337, 357; 835 NW2d 319 (2013). We know of no cases, however, in which *Jenkins* has stood for the proposition that the trial court must give an immediate limiting instruction when the prosecutor questions a witness in such a way that implies a belief that a prior inconsistent statement was made. Simply put, *Jenkins* does not control. The outcome of this case is controlled by the binding caselaw pertaining to the dependability of jury instructions[4] and the validity of a defense attorney's decision to quietly move past an issue.[5]

In conclusion, defendant has not presented a valid claim of ineffective assistance of counsel.

## B. PLAIN ERROR

Defendant argues that the trial court's failure to sua sponte provide the jury a curative instruction constituted plain error affecting substantial rights. We disagree.

In general, questions of law involving jury instructions are reviewed de novo, and whether a trial court's decision concerning whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, defendant did not request an instruction, and this issue is therefore unpreserved. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012) ("A defendant must raise an issue in the trial court to preserve it for [this Court's] review."). "This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017) (quotation marks and citation omitted); see also MCL 768.29 ("The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."). A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), reh den 461 Mich 1205 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent

---

[4] See *Unger*, 278 Mich App at 235 ("Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements."); *People v Wood*, 307 Mich App 485, 506; 862 NW2d 7 (2014), vacated in part on other grounds 498 Mich 914 (2015) ("[E]ven if the prosecutor's statements were improper, the trial court's instructions, which emphasized that the prosecutor's opening statement was not evidence and that the jury alone had the responsibility to determine witness credibility, cured any potential prejudice.")

[5] See *Bahoda*, 448 Mich at 287 n 54.

defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Everett*, 318 Mich App at 527 (quotation marks and citation omitted). However, for the reasons discussed above, we conclude that the jury in this case was properly instructed.[6] Therefore, defendant cannot demonstrate plain error.

## III. SUFFICIENCY

Finally, defendant argues that the prosecution failed to present sufficient evidence to prove her guilt beyond a reasonable doubt. We disagree.

This Court reviews de novo challenges to the sufficiency of the evidence. *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). "When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008).

"The prosecution need not negate every theory consistent with innocence, but is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to establish the elements of a crime." *People v Fennell*, 260 Mich App 261, 270; 677 NW2d 66 (2004). It is the job of the jury, not this Court, to assess the credibility of witnesses. *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007). When a conviction is based on contradictory testimony, this Court must defer to the jury's decision unless the "testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it or [the testimony] contradicted indisputable physical facts or defied physical realities . . . ." *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998) (quotation marks and citation omitted). "A jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012).

Defendant was convicted of possession of less than 25 grams of fentanyl. MCL 333.7403(2)(a)(*v*). "Possession is a term that signifies dominion or right of control over the drug with knowledge of its presence and character." *People v Cohen*, 294 Mich App 70, 76; 816 NW2d 474 (2011) (quotation marks and citation omitted). A conviction can be based on actual or constructive possession. *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010). "Constructive possession, which may be sole or joint, is the right to exercise control over the drug coupled with knowledge of its presence." *Cohen*, 294 Mich App at 76. "[C]onstructive possession exists when

---

[6] "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief" under one theory even if they cannot obtain relief under the other. *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020), citing *People v Randolph*, 502 Mich 1; 917 NW2d 249 (2018). However, in this particular case, the same facts support our conclusions under both the plain error and ineffective assistance frameworks.

the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *People v Wolfe*, 440 Mich 508, 521; 489 NW2d 748 (1992). "Close proximity to contraband in plain view is evidence of possession." *Cohen*, 294 Mich App at 77. However, it is not sufficient to establish that the defendant was merely present where the controlled substance was found; "an additional connection between the defendant and the controlled substance must be established." *People v Meshell*, 265 Mich App 616, 622; 696 NW2d 754 (2005).

The circumstantial evidence in this case was sufficient for a reasonable jury to infer that defendant constructively possessed the fentanyl. Sutton admitted that defendant asked him what she should do when Sutton was pulled over, and this suggests consciousness of guilt. The fentanyl was found on the floor in front of defendant's seat and next to her foot. Despite the floor being wet from the snow where the lottery ticket was found at the time of the stop, the officer testified that the lottery ticket upon which the fentanyl was found was completely dry, and this suggested that it had not been there for a long time. Moreover, Sutton drove to somebody else's house after picking up defendant and prior to being pulled over. When he arrived at the house, defendant went to the person's door and, according to Sutton's testimony, was there for approximately five minutes. However, when he was initially pulled over, Sutton lied to the officer and said that he had come directly from defendant's home. A jury could infer from this evidence that Sutton took defendant to this house to obtain the fentanyl and that she was doing so while she was at this person's door. Sutton testified that he went to the third person's house because he received a phone call saying that she needed a ride, that defendant went to the person's door because defendant knew this person, and that the person's need for transportation resolved itself between the time he received the call and the time he went to the house. However, the jury apparently did not find this testimony credible, and we do not disturb a jury's findings on matters of credibility. See *Odum*, 276 Mich App at 419; *Russell*, 297 Mich App at 721. Finally, Sutton testified that there was not a lottery ticket on floor of the passenger area when he began driving the van that day, that he only had two other passengers prior to defendant that day, and that neither of them sat up front with him; all of this lends further support to the inference that defendant had placed the fentanyl on the floor.

For these reasons, there was sufficient evidence for a rational jury to find defendant guilty beyond a reasonable doubt of possession of less than 25 grams of fentanyl.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Allie Greenleaf Maldonado